**IN RE STATE of Texas EX REL. Mark SKURKA District Attorney for the 105th Judicial District**

**NUMBER 13–16–00221–CR**

Court of Appeals of Texas, Corpus Christi-Edinburg.

Delivered and filed June 13, 2016.

[redacted]

[redacted]

Mark Skurka, Corpus Christi, TX, pro se.

Douglas K. Norman, Asst. District Attorney, Corpus Christi, TX, for Relator.

Jacqueline A. Del Llano Chapa, Travis W. Berry, Attorney at Law, Corpus Christi, TX, for Real Party in Interest.

Before Chief Justice Valdez and Justices Rodriguez and Garza

## OPINION

Opinion by Justice Garza[1]

The State of Texas, ex rel. Mark Skurka, the District Attorney for the 105th Judicial District Court of Nueces County, Texas, filed a petition for writ of mandamus contending that the trial court "clearly abused its discretion by ordering the State to disclose prior to trial which specific jail telephone recordings of the defendant it will present as evidence at trial."[2] We deny the petition for writ of mandamus.

### I. Background

Real party in interest Antonio Aguilera was indicted for aggravated assault as a habitual felony offender and assault family violence with a prior conviction. *See* Tex. Penal Code Ann. §§ 22.01, 22.02 (West, Westlaw through 2015 R.S.). During the course of the case, the State discovered and produced recordings of more than 1,000 telephone calls made by Aguilera while he was incarcerated.

On March 24, 2016, the case was set for docket call in preparation for trial; however, Aguilera's counsel requested a continuance of the trial date. At that hearing, Aguilera's counsel asserted that she had listened to approximately five hours of the recorded jail calls, and she was only halfway through the first of four compact discs containing the calls. Aguilera's counsel informed the trial court that she had approached the prosecutor for the State and inquired if the State intended to use the recorded jail calls at trial, but the prosecutor informed her that she was "not quite sure." The prosecutor asserted that she notified Aguilera's counsel that the recorded jail calls were available for retrieval on March 4, 2016, and the State's records showed that Aguilera's counsel picked up the compact discs containing the recordings on March 10, 2016.

1. *See* Tex.R.App. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *Id.* R. 47.4 (distinguishing opinions and memorandum opinions).

2. This cause arises from *State of Texas v. Antonio Aguilera,* currently pending in trial court cause number 15–CR–3503–H in the 347th District Court of Nueces County, Texas. The Honorable Missy Medary is the respondent in this original proceeding. *See* Tex. R.App. P. 52.2.

On March 28, 2016, the trial court granted Aguilera's motion for continuance regarding the trial, and the parties further addressed the recorded jail calls. Aguilera's counsel requested the prosecutor to "pare down exactly which [jail phone calls] that she is going to think she may want to introduce into testimony." The trial court noted on the record that there "has to be some kind of way to work this," particularly with regard to appointed counsel, "because ... the county, the taxpayers, pays for every single second that [Aguilera's counsel] is going to be listening to these things."

At a hearing on April 14, 2016, the parties and trial court revisited the issue of the jail calls. Aguilera's counsel re-urged her request for the prosecutor to notify her as to which jail calls the State was planning to use during its case-in-chief. She estimated that the recorded jail calls constituted "about a month's worth of listening to 24-7." She argued that it would be beneficial to determine, prior to trial, whether any of the calls might be subject to objection. The prosecutor for the State opposed Aguilera's request and contended that forcing the State to designate which calls it intended to use at trial invaded its work product privilege. At the conclusion of the hearing, the trial court ordered the State to produce "any and all jail calls that [it plans] to use in the trial."

At a hearing on April 15, 2016, the trial court and counsel for both parties further discussed the issues and the trial court clarified its ruling as follows:

THE COURT: [A]t this time, what the Court is going to do is clarify for the Court of Appeals the ruling of the district court....

[T]he Defense's requested the State basically to turn over what phone calls, specifically, jail calls they plan—the State plans on using in their case in chief. At this time, to make sure that the record is clear, the Court is ordering the State to turn over an exhibit list and a witness list, and on that exhibit list, the Court is ordering the State to provide not just a blanket exhibit, but for not only the efficiency of the trial, but for the ability to proceed forward with judicial economy, the State needs to prepare an exhibit list, and that exhibit list needs to be trial ready, it needs to be a trial ready exhibit list which means that the State of Texas either has gotten an agreement from the Defense on something, or it needs to be something that is going to come in as evidence, which means that if the State provides to the Defense, Exhibit 5, for instance, that they plan on putting in, that Exhibit 5, in its entirety, is 500 jail phone calls, and in reality, they're only offering three out of that, and they've offered it as an exhibit altogether, and there's any objection to anything else on that exhibit, because it's not trial ready, it's not ready to go to the jury, then the Court would be of the opinion they would keep the whole exhibit out if there's any type of objections.

So the Court is making sure that the record is clear that the State is being ordered, and I understand they've mandamused me, but that the Court is ordering the State to come up with an exhibit list and a witness list, and that was to be turned over by 5:00 today. Now, I'm assuming that we'll see what the Court of Appeals does in regards to whether or not they're going to stay the trial....

PROSECUTOR: If I'm understanding you, Your Honor, then you're saying we will be limited to—am I

correct in understanding we would be limited at trial to the exhibits that are on that list, if there are other jail calls later we decide we would like to present, we would not be able to present those at trial?

THE COURT: Yes, because I'm asking you for a trial ready exhibit list and a trial ready witness list. And what I'm trying to circumvent is that I don't want the State to say: Okay, great, here's Exhibit 5, and then, it's got 19 million phone calls on it and you aren't allowed to put in 19 million phone calls because there's an objection one way or the other. And so you have exhibit—you put that in as Exhibit 5, in its entirety. So, if one thing or two things or 18 million things are objected to, and they're not trial ready and they're not relevant, or they're not a statement against interests, or whatever it is, whatever reason that's gonna come in, then I think you're limited on that to what you've put in as your exhibit list.

PROSECUTOR: May I ask for just one clarification, Your Honor?

THE COURT: Sure.

PROSECUTOR: Specifically, with the jail calls. Then are you saying—are we treating each specific call then that's recorded as a separate incident there that we could—in other words, if he makes two calls a day, then each of those two calls would be a separate incident that we would be expected to list?

THE COURT: Exactly.

After further discussion, the trial court stated that it was ordering "an exhibit list of all of the jail calls in regards to this case." Based on further discussions in the record, the parties anticipated that the jail calls would be produced in one compact disc, and the individual calls that the State anticipated using would be designated according to the temporal location that they appeared on the disc.

This original proceeding ensued. By one issue, the State contends that the trial court clearly abused its discretion by ordering the State to disclose prior to trial which specific jail telephone recordings of the defendant it will present at trial. The State contends that: (1) mandamus is an appropriate remedy for the trial court's error; (2) the defendant has only a limited right to discovery which does not include the State's trial exhibits; (3) the State has no duty to create a document that does not currently exist; (4) requiring the State to provide notice regarding what evidence it intends to introduce at trial violates the attorney work product exception to discovery; and (5) the indictment, not a trial exhibit list, should provide the defendant with the State's theory of the case.

The Court requested and received a response to the petition for writ of mandamus from Aguilera. Aguilera contends that the trial court's ruling is a discretionary ruling and not a ministerial act, thus mandamus is not appropriate; the trial court's order did not require the produc-

tion of attorney work product; and the trial court's order was a proper use of its discretion to promote judicial economy. By reply, the State argues that the order at issue is not "an ordinary discovery order" but is instead an "extraordinary extension of authority justifying mandamus relief."

## II. STANDARD OF REVIEW

■ To be entitled to mandamus relief, the relator must show: (1) that it lacks an adequate remedy at law; and (2) that what it seeks to compel is a ministerial act. *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex.Crim.App.2013) (orig.proceeding). If the relator fails to meet both of these requirements, then the petition for writ of mandamus should be denied. *State ex rel. Young v. Sixth Jud. Dist. Ct. of Apps. at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim.App.2007) (orig.proceeding). The parties do not dispute that the State lacks an appellate remedy for the order at issue in this case. *See generally* TEX.CODE CRIM. PROC. ANN. art. 44.01 (West, Westlaw through 2015 R.S.).

■ For mandamus relief, the act sought to be compelled must be a ministerial act that does not involve a discretionary or judicial decision. *State ex rel. Young*, 236 S.W.3d at 210. The ministerial-act requirement is satisfied if the relator can show a clear right to the relief sought. *In re State ex rel. Weeks*, 391 S.W.3d at 122. A clear right to relief is shown when the facts and circumstances dictate but one rational decision "under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen v. Carnes*, 343 S.W.3d 805, 810 n.6 (Tex. Crim. App. 2011); *see In re State ex rel. Weeks*, 391 S.W.3d at 122. If the trial court lacks authority or jurisdiction to take a particular action, the court has a ministe-rial duty to refrain from taking that action, to reject or overrule requests that it take such action, and to undo the action if it has already taken it. *In re Medina*, 475 S.W.3d 291, 298 (Tex.Crim.App.2015) (orig.proceeding). In contrast, a ministerial act is not implicated if the trial court must weigh conflicting claims or collateral matters which require legal resolution. *State ex rel. Hill v. Ct. of Apps. for Fifth Dist.*, 34 S.W.3d 924, 927 (Tex.Crim.App. 2001) (orig.proceeding).

■■ As a general rule, discovery rulings are discretionary and are not subject to review by mandamus. *In re Hartman*, 429 S.W.3d 680, 682 (Tex.App.–Beaumont 2014, orig. proceeding); *see Dickens v. Ct. of Apps. for the Second Sup. Jud. Dist. of Tex.*, 727 S.W.2d 542, 552 (Tex.Crim.App. 1987); *State ex rel. Simmons v. Moore*, 774 S.W.2d 711, 714 (Tex.App.–El Paso 1989, orig. proceeding). Nevertheless, mandamus relief is appropriate when the trial court issues a discovery order that is beyond the scope of its authority. *In re State*, 162 S.W.3d 672, 678 (Tex.App.–El Paso 2005, orig. proceeding); *In re State ex rel. Robinson*, 116 S.W.3d 115, 117–18 (Tex.App.–Houston [14th Dist.] 2002, orig. proceeding); *State ex rel. Wade v. Stephens*, 724 S.W.2d 141, 143–44 (Tex.App.–Dallas 1987, orig. proceeding); *see also Dickens*, 727 S.W.2d at 548–50; *In re Ligon*, No. 09–14–00337–CR, 2014 WL 5037229, at \*3 (Tex.App.–Beaumont Oct. 8, 2014, orig. proceeding) (mem. op. per curiam).

## III. ORAL RULING

■ A petition for writ of mandamus must include an appendix and record sufficient to support the claim for mandamus relief. *See* TEX.R.APP. P. 52.3(k) (specifying the required contents for the appendix); *Id.* R. 52.7(a) (specifying the required contents for the record). Among other

items, the petition must include, as part of an appendix, "a certified or sworn copy of any order complained of, or any other document showing the matter complained of [.]" *Id.* R. 52.3(k)(1)(A). In this context, mandamus may be based upon an oral ruling. *In re Nabors,* 276 S.W.3d 190, 192 n. 3 (Tex.App.–Houston [14th Dist.] 2009, orig. proceeding); *In re Bill Heard Chevrolet, Ltd.,* 209 S.W.3d 311, 314 (Tex.App.–Houston [1st Dist.] 2006, orig. proceeding); *In re Bledsoe,* 41 S.W.3d 807, 811 (Tex. App.–Fort Worth 2001, orig. proceeding). However, an oral ruling is not subject to mandamus review unless the ruling is clear, specific, enforceable, and adequately shown by the record. *In re State ex rel. Munk,* 448 S.W.3d 687, 690 (Tex.App.–Eastland 2014, orig. proceeding); *In re Bledsoe,* 41 S.W.3d at 811; *In re Perritt,* 973 S.W.2d 776, 779 (Tex.App.–Texarkana 1998, orig. proceeding); *see also In re Mares,* No. 13–15–00549–CV, 2016 WL 362783, at *2 n. 5 (Tex.App.–Corpus Christi Jan. 28, 2016, orig. proceeding) (mem.op.).

 In this proceeding, the trial court has not signed a written order regarding its ruling on the designation of the jail calls. However, the parties have furnished this Court with an affidavit regarding the trial court's ruling and the reporter's record memorializing the trial court's ruling, and the order at issue is clear, specific, and enforceable. *See In re State ex rel. Munk,* 448 S.W.3d at 690; *In re Bledsoe,* 41 S.W.3d at 81. Accordingly, we proceed with our mandamus review.

## IV. LAW & ANALYSIS

The State has alleged multiple reasons why the trial court's order requiring it to designate which of the jail calls it intends to use at trial constitutes an abuse of discretion. Several of the State's arguments are premised on the concept that the trial court's order exceeds the scope of discovery allowed by article 39.14 of the Texas Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. art. 39.14 (West, Westlaw through 2015 R.S.). In this regard, the State contends that the trial court's order exceeds the defendant's limited right to discovery and requires the State to create a document which currently does not exist insofar as it must create a list of the jail recordings that it intends to use. The State further contends that the trial court's order violates the State's work product privilege because it requires it "to disclose its mental processes, conclusions, and legal theories" and "tip[ ] its hand as to which evidence it will and will not actually present at trial." In response, Aguilera contends, inter alia, that the trial court's order was consistent with article 39.14 and constituted a proper use of its discretion to promote judicial economy.

The parties do not cite any cases directly on point regarding whether the trial court has the authority, in a criminal case, to require a party to designate which of a voluminous number of items it intends to utilize at trial.[3] We begin with an overview of the applicable law.

---

3. Cases construing the federal rules provide a broad range of analyses on this issue. *See, e.g., United States v. Prince,* 618 F.3d 551, 561–62 (6th Cir.2010) (rejecting the defendant's claim that the district court abused its discretion by not requiring the government to specifically identify the exhibits it intended to introduce at trial from among the estimated 70,000 pages of discovery materials that were provided to the defendant); *United States v. Grace,* 526 F.3d 499, 502, 516 (9th Cir.2008) (en banc) ("[W]e further hold that the district court had authority to order and enforce the pretrial disclosures of government witnesses and evidentiary documents and that the district court did not abuse its discretion in doing so here."); *United States v. Elam,* 678 F.2d 1234, 1253 (5th Cir.1982) ("'[Federal

## A. Trial Court Authority

The control of the business of the court is vested in the sound discretion of the trial judge. *Marquez v. State,* 921 S.W.2d 217, 223 (Tex.Crim.App.1996) (en banc); *see Wheatfall v. State,* 882 S.W.2d 829, 838 (Tex.Crim.App.1994). "[T]rial courts have broad discretion in managing the course of a trial generally." *Dang v. State,* 154 S.W.3d 616, 619 (Tex.Crim.App. 2005). Specifically, the "trial court is vested with broad discretion to manage and control its docket in order to promote the orderly and efficient administration of justice while protecting the statutory and constitutional rights of all persons who come before the court." *Taylor v. State,* 255 S.W.3d 399, 402 (Tex.App.–Texarkana 2008, pet. ref'd). "The trial court has the power and obligation to control the courtroom for the purposes of ascertaining the truth, promoting judicial economy, and protecting witnesses." *Allen v. State,* 232 S.W.3d 776, 780 (Tex.App.–Texarkana 2007, no pet.); *see Alexander v. State,* 282 S.W.3d 143, 145 (Tex.App.–Texarkana 2009, pet. ref'd); *Gonzales v. State,* 2 S.W.3d 600, 607 (Tex.App.–Texarkana 1999, pet. ref'd). Stated otherwise, every court has the "inherent power, exercisable in its sound discretion, consistent with the constitution and statutes," to control the disposition of the cases on its docket with "economy of time and effort." *McDonald v. State,* 401 S.W.3d 360, 362 (Tex.App.–Amarillo 2013, pet. struck) (quotations and citations omitted); *see State v. Johnson,* 821 S.W.2d 609, 612 (Tex.Crim.App.1991) (en banc) (stating that a court can exercise its inherent judicial authority "to aid in the exercise of its jurisdiction, in the administration of justice, or in the preservation of its independence and integrity"); *State ex rel. Holmes v. Denson,* 671 S.W.2d 896, 898 (Tex.Crim.App.1984) (stating that a court with jurisdiction has the power to determine "all essential questions" and "to do any and all things with reference thereto" as authorized by the Constitution, statutes, or established principles of law).

Of specific importance to this case, although mentioned by neither party, Texas Rule of Evidence 611 contains an express mandate requiring the court to "exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to: (1) make those procedures effective for determining the truth; (2) avoid wasting time; and (3) protect witnesses from harassment or undue embarrassment." Tex.R. Evid. 611(a). Rule of Evidence 611 permits a trial court "broad discretion in controlling the mode and order of interrogation of witnesses and presentation of evidence," but, "[u]nder this rule, the scope of a trial court's exercise of discretion is limited to that which is (1) reasonable and (2) in the pursuit of justice as well as efficiency." *Dang,* 154 S.W.3d at 619; *see Packer v. State,* 442 S.W.3d 375, 379 (Tex.App.–Dallas 2011, no pet.); *see also* Tex.R. Evid. 611(a).

Rule of Criminal Procedure 16] does not require that the prosecution disclose all the minutia of its evidence, it does not require revelation of trial strategy, nor does the Rule require delineation of the government's case with total specificity."); *United States v. Blankenship,* No. 3:14–CR–124, 2015 WL 4561458, at *6 (E.D.Tenn. July 29, 2015, order) ("[T]he Court finds that it has the inherent power to order the government to designate the evidence that it will introduce in its case-in-chief when justice so requires."); *United States v. Vilar,* 530 F.Supp.2d 616, 639 (S.D.N.Y.2008) (concluding that it was reasonable to order the government to provide an exhibit list prior to trial); *United States v. Causey,* 356 F.Supp.2d 681, 683–85 (S.D.Tex. 2005) (rejecting the defendant's request for an order requiring the government to produce specific categories of documents where the government had already provided "hot" documents, indices, and a pretrial exhibit list).

## B. Article 39.14

Article 39.14(a) governs discovery in criminal law matters. *See* TEX.CODE CRIM. PROC. ANN. art. 39.14(a). "Article 39.14(a) addresses what the State must produce and when the State must produce it." *In re State ex rel. Munk*, No. 11–15–00169–CV, 494 S.W.3d 370, 376, 2015 WL 6121390, at *4 (Tex.App.–Eastland Oct. 15, 2015, orig. proceeding). It provides, in relevant part:

Subject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of this code, as soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state. The state may provide to the defendant electronic duplicates of any documents or other information described by this article. The rights granted to the defendant under this article do not extend to written communications between the state and an agent, representative, or employee of the state. This article does not authorize the removal of the documents, items, or information from the possession of the state, and any inspection shall be in the presence of a representative of the state.

TEX.CODE CRIM. PROC. ANN. art. 39.14(a). The article further requires the State to disclose "to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged." *Id.* art. 39.14(h). Further, under this article, on a party's request, a party "shall disclose to the requesting party the name and address of each person the disclosing party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence." *Id.* art. 39.14(b).

## C. Work Product

Texas Code of Criminal Procedure article 39.14 requires the production of items that are "not otherwise privileged" and that are not "work product." *Id.* art. 39.14(a). Texas Rule of Evidence 503(b)(1) delineates the attorney-client privilege in Texas: "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client." TEX.R. EVID. 503(b)(1); *see Cameron v. State*, 241 S.W.3d 15, 19 (Tex. Crim.App.2007). Section (b)(2) adds a special rule of privilege in criminal cases, which states that "a client has a privilege to prevent the lawyer or lawyer's representative from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship." TEX.R. EVID. 503(b)(2). The attorney's work product falls under this special rule of privilege. *Cameron*, 241 S.W.3d at 19.

In *Pope v. State*, the Texas Court of Criminal Appeals examined the attor-

454

ney-client privilege and work product doctrine in criminal cases:

The scope of the attorney work-product doctrine is sometimes confused with that of the attorney-client privilege. The attorney-client privilege is an evidentiary privilege and protects against the compelled disclosure of confidential communications. This privilege belongs to and protects the client. The attorney work-product doctrine, while not a true evidentiary privilege, belongs to and protects the attorney. Its purpose is to stimulate the production of information for trials, and it rewards an attorney's creative efforts by giving his work product a qualified privilege from being shared with others. It is premised on the notion that an attorney should not be compelled to disclose the fruits of his labor to his adversary. Under Texas civil rules, material that reflects the attorney's personal thought processes is "core work product" and receives absolute protection, while other materials, such as documents, reports, or memoranda compiled by the attorney or his agents and communications made in anticipation of litigation or trial are "other work product" and receive qualified protection. While the work-product doctrine protects the communications of parties, attorneys, and agents, the underlying factual information is not protected. For example, descriptions of potential witnesses and statements that would reveal whether the party had spoken to potential witnesses are not work product and are discoverable. As Professor Dix has explained:

if defense counsel's efforts do not create or enhance the substantive information, that information—or the form in which it is preserved—does not become protected work product.

That is, facts that are divulged by or exist independent of the attorney or his agents are not protected, but statements or documents that set out their thoughts concerning the significance of these facts or the strategic conclusions that the attorney or his agents draw from them may well be protected. Thus, material prepared by a consulting expert appointed by the trial court to assist the defense in developing strategies and theories is protected by the work-product doctrine when that material reflects the expert's thoughts regarding the strength and weaknesses of a defense theory.

207 S.W.3d 352, 357–58 (Tex.Crim.App. 2006) (footnotes and citations omitted); see *Woodruff v. State*, 330 S.W.3d 709, 728–29 (Tex.App.–Texarkana 2010, pet. ref'd) (holding that the distinction between core work product and other work product applies in criminal cases)[4] Thus, materials that are prepared by or at the request of an attorney in anticipation of litigation are protected and privileged under the work product doctrine. *See In re Bexar Cnty. Crim. Dist. Attorney's Office*, 224 S.W.3d 182, 186 (Tex.2007) (orig.proceeding); *Wright v. State*, 374 S.W.3d 564, 578–79 (Tex.App.–Houston [14th Dist.] 2012, pet. ref'd); *Woodruff*, 330 S.W.3d at 729.

### D. Analysis

We first address the State's contention that the trial court's order re-

**4.** The discussion in *Pope v. State* regarding "core" and "other" work product mirrors the distinction made in civil cases under the Texas Rules of Civil Procedure. 207 S.W.3d 352, 357–58 (Tex.Crim.App.2006); *see* Tex.R. Civ. P. 192.5. Under this rule, "core" work product is not discoverable, but "other" work product is discoverable "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." *See* Tex.R. Civ. P. 192.5(b).

quires it to create a document in violation of article 39.14. *See* Tex.Code Crim. Proc. Ann. art. 39.14. Article 39.14 does not give the trial court the authority to order the State to create a document that is not already in its possession, custody, or control. *In re State ex rel. Munk,* 448 S.W.3d 687, 692 (Tex.App.–Eastland 2014, orig. proceeding) (construing former article 39.14); *In re Watkins,* 369 S.W.3d 702, 706–07 (Tex.App.–Dallas 2012, orig. proceeding) (same); *In re Watkins,* 367 S.W.3d 932, 933 (Tex.App.–Dallas 2012, orig. proceeding); *see also In re Stormer,* No. WR–66865–01, 2007 WL 1783853, at *2 (Tex.Crim.App. June 20, 2007) (not designated for publication) (stating that article 39.14 "is specifically limited to the discovery of pre-existing documents and tangible items that are in the State's possession" and does not give the trial court the authority to order the State "to create a document that does not currently exist").

We disagree with the State's characterization of the order subject to review in this cause. The trial court's order, properly characterized, does not require the State to create and produce a document that is not already in its possession, custody, or control. Rather, the trial court's order requires the State to identify which previously-produced discovery materials are likely to be used at trial. In this context, article 39.14 does not prohibit the trial court from ordering the State to, for example, provide the names and addresses of witnesses or identify extraneous offense evidence. *See, e.g.,* Tex.Code Crim. Proc. Ann. art. 39.14(a) (requiring parties to "disclose to the requesting party the name and address of each person the disclosing party may use at trial" under certain rules of evidence); *Ross v. State,* 133 S.W.3d 618, 628 (Tex.Crim.App.2004) (concerning pretrial discovery orders requiring the designation of extraneous offense evidence). Documents reflecting such disclo-

sures or designations are not, strictly speaking, already in the State's possession, custody, or control, yet such documents are clearly contemplated as appropriate and necessary components of the discovery scheme. We conclude that the trial court's order did not improperly require the State to create discovery materials that are not within its possession, custody, or control.

We next address the State's contention that the trial court's order requires it to produce data protected by the work product doctrine. The State alleges that the trial court's order requires it to reveal its thought processes in designating which of the more than 1,000 recorded calls it plans to use at trial. We agree that the selection of specific recordings will inevitably reveal some of the State's thought processes. However, the trial court's order requires the mere designation of the calls by reference to their temporal placement on the compact disc without descriptive terms or summaries. The State's efforts at designating the jail calls will not create or enhance the substantive information provided and will not reveal the State's thoughts concerning the significance of these recordings or any strategic conclusions that the State may draw from them. *See Pope,* 207 S.W.3d at 357–58; *Woodruff,* 330 S.W.3d at 728–29. "[T]he work product privilege does not operate as a blanket privilege covering all decisions made by the DA's Office." *In re Crudup,* 179 S.W.3d 47, 50 (Tex.App.–San Antonio 2005, orig. proceeding), *mand. granted on other grounds sub nom. In re Bexar Cnty. Crim. Dist. Attorney's Office,* 224 S.W.3d at 188. Further, we note that in the civil context, "trial exhibits ordered disclosed under Rule 166 or Rule 190.4" are not considered to be work product that is exempt from discovery. *See* Tex.R. Civ. P. 192.5(c) (stating that trial exhibits ordered disclosed are "not work product pro-

tected from discovery"); *id.* R. 166 (allowing a court to require the parties to appear for a pretrial conference regarding, inter alia, "marking and exchanging of all exhibits that any party may use at trial and stipulation to the authenticity and admissibility of exhibits to be used at trial" and "written trial objections to the opposite party's exhibits, stating the basis for each objection").

█ We turn our attention to the trial court's rationale in ordering the State to designate which jail calls it will use at trial from the voluminous number of jail calls that have been produced. The trial court repeatedly stated that it was ordering the State to prepare an exhibit list regarding the jail calls that it intends to use at trial for "the efficiency of the trial" and "judicial economy." Given the large number of jail calls at issue in this case and the likelihood that the State will utilize only a minor portion of those calls at trial, a pretrial designation of the jail calls best serves Aguilar's right to a fair trial and is likely to aid in the orderly presentation of Aguilar and the State's respective cases at trial. Further, a pretrial designation of the jail calls will aid in the quick and efficient identification of any objectionable matters that could be resolved pretrial regarding the admissibility of specific jail calls. In this regard, the trial court's order was authorized by rule 611's mandate for the court to "exercise reasonable control" over the mode of "presenting evidence" so as to "make those procedures effective for determining the truth" and "avoid wasting time." TEX.R. EVID. 611(a). Moreover, based on this record, the trial court's order constituted an exercise of discretion that was both reasonable and rendered in the pursuit of justice as well as efficiency. *See Dang,* 154 S.W.3d at 619; *Packer,* 442 S.W.3d at 379.

When we consider the standard of review we are to apply in original proceedings, the discussion of work product doctrine in *Pope,* the specific facts and circumstances at issue in this case, and the discretion granted to the trial court in determining issues related to discovery, we conclude that the State has not shown that the trial court violated a ministerial duty in ordering the State to designate which jail calls it will likely utilize at trial. Accordingly, we overrule the State's issue as presented in this original proceeding.

## IV. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, the reply, and the applicable law, is of the opinion that the State has not met its burden to obtain relief. We deny the petition for writ of mandamus.