**Affirmed and Opinion filed March 30, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00304-CR

---

**SANTANA BOTELLO FORTUNA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Court at Law No 2**
**Galveston County, Texas**
**Trial Court Cause No. MD-0388913**

---

### OPINION

In two issues, Appellant Santana Botello Fortuna ("Fortuna") appeals his conviction of assault by causing bodily injury and family violence under Section 22.01(a)(1) of the Penal Code and Article 42.013 of the Code of Criminal Procedure. Appellant argues that the trial court erred (1) when it failed to order the State to produce two "Family Violence Screening Forms" (Screening Forms) in violation of the Michael Morton Act (the "Act" or "Morton Act"); and (2) when it allowed the State to present character conforming evidence to the jury under

Article 38.371 that appellant contends did not meet the prerequisites of that statute. Tex. Code Crim. Pro. Ann. art. 38.371. We conclude that the trial court did not err in admitting the extraneous acts, and though the trial court should have ordered the State to disclose the Screening Forms to appellant under the Act, appellant was not harmed by the violation. We affirm.

## I. GENERAL FACTUAL AND PROCEDURAL BACKGROUND

The State charged the Appellant Santana Botello Fortuna with committing the misdemeanor offense of assault involving family violence. The amended charging instrument states that appellant:

> …on or about the 15th day of August, 2019, did then and there intentionally, knowingly, or recklessly cause bodily injury to Angelica Botello by kicking Angelica Botello on her waist and/or stomach with the [appellant's] foot and/or feet and/or striking Angelica Botello with the [appellant's] hand and/or hands.

Appellant pleaded "not guilty", and his case was tried to a Galveston County jury. During trial appellant's wife, Angelica Botello ("Angelica"), the complainant in the case, testified about her relationship with appellant prior to the alleged offense, her desire to prevent the State from prosecuting appellant, the alleged offense, her injuries, and the status of her family up to the time of trial.

Prior to trial, Angelica contacted a prosecutor and informed her that she wanted to drop the charges against appellant. As she explained at trial, Angelica had told the prosecutor that after the recent loss of her twins things were "already hard enough." Angelica testified that she went to the Galveston County Criminal District Attorney's Office to fill out paperwork dropping charges against the appellant.

With respect to the events of August 15, 2019, Angelica testified that, as in the past, appellant went drinking with his friends after work and came home late.

2

She called and texted him, but he did not respond. When appellant returned home, Angelica confronted him and an argument ensued. Angelica testified that she and appellant began yelling at each other and that she pushed him, knocking him backwards; that they began pushing each other back-and-forth, "hitting" each other with their legs, and that appellant made contact with her inner thigh. She described how, during the scuffle, appellant grabbed a TV remote off the kitchen counter and hit her on the face and inner thigh with it, causing scratches, and then smashed the remote on the counter and broke it. Angelica called 911.

Responding officer with the Galveston County Sherriff's Office, Deputy Ronald Paulk, testified about his familiarity with the residence based on the call history to the address, his observations of appellant, and Angelica's condition upon arriving at the scene.

Another responding officer with the Galveston County Sherriff's Office, Deputy Jonathan Popovich ("Popovich"), testified that he was aware of prior calls to the residence, that Angelica claimed that she was assaulted by appellant after a verbal argument, that Angelica claimed appellant kicked her in the waist and stomach area, and that he observed scrapes and scratches on her thigh. Popovich stated appellant reported that the argument with Angelica was over food and declined to answer any further questions. Popovich testified that he placed appellant in custody because of (a) appellant's lack of cooperation, (b) Angelica's report of being kicked in the stomach, and (c) his observation "how upset [the children were] over everything".

The jury found Appellant guilty as charged in the amended information, and appellant was placed on community supervision for 12 months. Appellant sought this appeal.

3

## II. MICHAEL MORTON ACT VIOLATION

Under his first issue, appellant both complains that the trial court abused its discretion with respect to its denial of his motion for mistrial, and complains the trial court abused its discretion by refusing to compel the disclosure of Angelica's two Screening Forms withheld by the State.

### A. Background Facts Relevant to the *Michael Morton Act*

Angelica met with the victim assistance coordinator twice to request that the prosecutor drop charges—first on August 28, 2019 and later on December 7, 2020. She filled out and signed two Screening Forms that were not provided to appellant's counsel prior to trial.

During trial, while she was being cross-examined, Angelica testified that she had provided the prosecution with affidavits of non-prosecution. Appellant's counsel requested a mistrial "based on prosecutorial misconduct" and argued that he had not been provided "the documents that this witness dropped off."

Trial recessed for the parties and the court to ascertain the status of the State's disclosure. The State confirmed that no affidavit had ever been provided by Angelica but noted Angelica's contact with the victim assistance coordinator yielded the two Screening Forms. The State contended that Angelica had disclosed significant personal information but also that Angelica expressed a desire to drop charges. The State argued that it had previously sent appellant's counsel emails advising counsel of Angelica's desire to drop the charges against appellant.

The trial court reviewed the two Screening Forms in camera. Both Screening Forms indicate that Angelica expressed a desire to drop the charges against appellant. The August 28, 2019 form indicates that Angelica sought medical treatment at UTMB whereas the December 7, 2020 form indicates that she did not

seek medical treatment.

In discussing the status of the disclosure, appellant's counsel agreed counsel was told that Angelica wanted to drop the charges. The trial court denied the motion for mistrial.

**B. Analysis**

*1. Order denying Motion for Mistrial*

We first address appellant's complaint regarding the trial court's denial of his motion for mistrial. A mistrial is the trial court's remedy for improper conduct that is "so prejudicial that expenditure of further time and expense would be wasteful and futile." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The denial of a motion for mistrial is typically reviewed for an abuse of discretion, such that an appellate court must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Archie v. State*, 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007); *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2019). Our review of the trial court's ruling on a motion for mistrial balances three factors: "(1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *Anavisca v. State*, No. 14-20-00160-CR, 2021 WL 4535409, at *10 (Tex. App.—Houston [14th Dist.] Oct. 5, 2021, no pet.) (mem. op., not designated for publication) citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Appellant urges us to apply a modified mistrial standard, insisting "conventional standards for a mistrial, however, do not apply to violations under the Michael Morton Act." We need not address which standard is proper because the procedural vehicle–the motion for mistrial–itself was premature.

As acknowledged by appellant in his brief, the trial court "concluded [the

Screening Forms] were undiscoverable." Specifically, as to the information indicating that Angelica had wanted to drop charges, the court found that the State's disclosure via emails sufficed to discharge its obligations under the Act; otherwise, the trial court concluded that no other evidence on the Screening Forms was material. Because the trial court perceived no "improper conduct", it never engaged in the quintessential motion-for-mistrial determination of assessing whether any remedy was necessary (and if so, assessing the most appropriate remedy). *See Hawkins v. State*, 135 S.W.3d at 77 ("A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.' In effect, the trial court conducts an appellate function: determining whether improper conduct is so harmful that the case must be redone."). We thus view the trial court's denial of the motion for mistrial as substantively a denial of the Morton Act discovery objection. The Morton Act issue in this case is not the court's ruling on the mistrial, but rather the court's refusal to order production of the Screening Forms during trial based on its finding that the Screening Forms were undiscoverable. In fairness to appellant, in this review, we actually do employ the standard he requests. But unlike reviewing a motion for mistrial, this standard requires that we analyze harm separately. *See Watkins v. State*, 619 S.W.3d 265, 290 (Tex. Crim. App. 2021).

*2. Order finding no violation, denying production of discovery*

Appellant contends that the trial court violated the provisions of Article 39.14 which provides in relevant part:

> (a) … the state **shall** produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers *but not* including the work product of counsel for the state in the case and

6

their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state….

\* \* \* \* \*

(c) If only a portion of the applicable document, item, or information is subject to discovery under this article, the state is not required to produce or permit the inspection of the remaining portion that is not subject to discovery and may withhold or redact that portion. The state shall inform the defendant that a portion of the document, item, or information has been withheld or redacted….

\* \* \* \* \*

(h) Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

Tex. Code Crim. Proc., Art. 39.14(a), (c), (h).

As set out by the Court of Criminal Appeals culminating in its *Watkins* decision, the baseline inquiries for determining a violation under the Michael Morton Act as embodied in Article 39.14 are: (1) did the State fail to disclose evidence (that was not work product or otherwise privileged); (2) was the withheld evidence favorable to the defendant; and (3) was the evidence material. *See Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (setting out *Brady* three-prong test); *see also Watkins v. State*, 619 S.W.3d 265, 290 (Tex. Crim. App. 2021)(construing "material", and effectively distinguishing third prong under the Texas statute). The remedy for a disclosure violation is a new trial. *Ex parte Miles*, 359 S.W.3d 647, 664 (Tex. Crim. App. 2012).

*3.     Did the trial court abuse its discretion in failing to find a Morton Act violation occurred and failing to require production of the Screening Forms?*

7

These factors are plainly applied to the record. The first part of the analysis looks to whether the evidence was discoverable such that the State was required to disclose it and thus encapsulates the State's work product assertion. Materials that are prepared by or at the request of an attorney in anticipation of litigation are protected and privileged under the work-product doctrine. *In re State ex rel. Skurka,* 512 S.W.3d at 454 (citing *In re Bexar County Criminal Dist. Atty's Office,* 224 S.W.3d 182, 186 (Tex. 2007); *Wright v. State,* 374 S.W.3d 564, 578-79 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). The two Screening Forms in question both contained a heading "Attorney Work Product." Yet, nothing in the Screening Forms or otherwise in the record indicates that the two Screening Forms were prepared by or at the request of an attorney in anticipation of litigation. The record indicates that the questions in the form were either answered by Angelica or by a victim assistance coordinator at Angelica's request. The State's argument that it complied with the Act by advising appellant's counsel through emails of the information contained in the Screening Forms is not because the State produced no showing of compliance with subsection (c) of article 39.14, that it ever informed appellant of the existence of the Screening Forms, and that any part of the Screening Forms was being withheld. *See* Tex. Code Crim. Proc., Art. 39.14(c). The Screening Forms were "papers" not demonstrated to be work product or "otherwise privileged", and thus because they were discoverable, we conclude the first step of the test is satisfied, i.e., that the State failed to produce the two Screening Forms and they were not privileged. *See e.g.*, *In re State ex rel. Skurka*, 512 S.W.3d 444, 455 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.) (mere designation of jail calls by the state as attorney work product not sufficient to show work product where no other indicia that "the State's thoughts concerning the significance of these recordings or any strategic conclusions that the State may draw from them" would be revealed).

8

Second, we look to see whether the Screening Forms were favorable to appellant. "Favorable evidence" includes both exculpatory evidence and impeachment evidence. *Hallman v. State*, 603 S.W.3d 178, 192 (Tex. App.—Fort Worth 2020), *vacated on other grounds*, 620 S.W.3d 931 (Tex. Crim. App. 2021); *Ex parte Chaney*, 563 S.W.3d 239, 266 (Tex. Crim. App. 2018). Impeachment evidence is evidence that "disputes, disparages, denies, or contradicts other evidence." *Hallman v. State*, 603 S.W.3d at 192. On their face the two Screening Forms were not unfavorable to the appellant. They contained information about Angelica's unwillingness to press charges and as asserted by appellant, when taken together, contain arguably inconsistent statements, which was information that could have been used for impeachment purposes. For reasons further described below, we do not find these pieces of information particularly substantial in light of the entire record, but their qualification as impeachment evidence makes them sufficient to satisfy the second part of the test. *See id.*

Finally, we consider whether the Screening Forms provided "material" evidence, as that term is construed under *Watkins*. Departing from more narrow interpretations, the *Watkins* court held,

> the word "material" as it appears in the statute means "having a logical connection to a consequential fact" and is synonymous with "relevant" in light of the context in which it is used in the statute.

*Watkins v. State*, 619 S.W.3d at 290 (citing four versions of Black's Law Dictionary). Appellant highlights conflicting evidence on the origin, nature and extent of Angelica's injuries, which arguably could have been used in an effort to impeach Angelica's credibility as a witness. Guided by *Watkins*, we are compelled to find error in the trial court's implied conclusion that such facts fall below the low threshold of materiality.

   4.    *Was appellant harmed by the court's error?*

9

Because the error in question – a violation of the discovery rules in article 39.14(a) of the Code of Criminal Procedure – is a state statutory error, we will address harm for such error accordingly and not as a constitutional error. Non-constitutional errors that do not affect appellant's substantial rights must be disregarded. *See* Tex. R. Evid. 103(a); Tex. R. App. P. 44.2(b); *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). Error affects substantial rights only if the error had a substantial and injurious effect or influence in determining the jury's verdict. *Gonzalez*, 544 S.W.3d at 373. If we have a fair assurance from examination of the record as a whole that the error did not influence the jury, or had but a slight effect, we will not overturn the conviction. *Id.* In making this determination, we consider (1) the character of the alleged error and how it might be considered in connection with other evidence; (2) the nature of the evidence supporting the verdict; (3) the existence and degree of additional evidence indicating guilt; and (4) whether the State emphasized the error. *Id.* We consider everything in the record and may consider the jury instructions, the parties' theories of the case, and closing arguments. *Motilla v. State*, 78 S.W.3d 352, 355–56 (Tex. Crim. App. 2002).

The only two components of the Screening Forms pertinent to the analysis on appeal are Angelica's statement desiring to withdraw the charges and her conflicting answers as to whether she sought medical treatment the day after the offense.

Based on our review of the record as a whole, we cannot agree that the error had more than a slight effect in the jury's determination of the case. Appellant did not dispute that the State otherwise kept the defense informed of information from Angelica through emails, and appellant's counsel had the opportunity to thoroughly cross-examine Angelica about her treatment and her desire to withdraw

10

charges. Both parties demonstrated to the jury that Angelica did not want to pursue charges against appellant, and yet Angelica never denied that appellant caused some bodily injury. Appellant did not show how the Screening Forms would impair the self-defense instruction he secured on the jury charge. The mere fact of Angelica's hospital visit the day after the offense neither adds to nor detracts from existing evidence on the probability that appellant caused bodily injury to Angelica on the date of the offense. The extent to which appellant was deprived of the opportunity to attack Angelica's credibility based on her conflicting answers on the Screening Forms is relatively minor; the likelihood that such evidence would significantly tip the jury's appraisal of her credibility in a manner favorable to appellant's case, having already heard ample evidence of Angelica's compromised support for the State's case, was de minimus. Moreover, whether Angelica went to the hospital would not significantly impact the question of whether the appellant injured her on the date of the offense because photographs taken by the police on the night of the offense, i.e., before the hospital visit, provided significant evidence of the extent of Angelica's injuries.

Appellant also contends that with the two Screening Forms, "Most likely, defensive, impeaching and mitigating evidence may have been obtained and presented." Appellant failed to make such a showing in his motion for new trial.

After considering the record, we determine that no substantial right was affected by the trial court's error in failing require production of the two Screening Forms under article 39.14(a). By the standard of Rule of Appellate Procedure 44.2(b), the error was harmless. *See* Tex. R. App. P. 44.2(b). Issue one is overruled.

### III. ADMISSION OF EXTRANEOUS ACTS

In his second issue, appellant complains that the trial court committed

harmful error when it allowed the State to present evidence of two prior assault complaints to the jury under Article 38.371. Tex. Code Crim. Pro. Ann. art. 38.371.  Under this issue, appellant complains that (1) the trial court failed to permit appellant's trial counsel to present argument challenging the admission of the two prior charges, (2) the trial court failed to evaluate the admission of evidence under Rules 403 and 404(b) of the Texas Rules of Evidence, and (3) the trial court reversibly erred in admitting the evidence because the evidence lacked probative value and "was prejudicial to the detriment of appellant", was prohibited under Rule 404(b)(1), and was not admissible under Rule 404(b)(2) of the Texas Rules of Evidence.

## A. Additional background relevant to the admission-of-evidence issue

The State notified appellant of its intent to introduce evidence of four extraneous offenses, including the two described below:

> On October 7, 2015, [appellant] was arrested for Assault [by] Caus[ing] Bodily Injury [to a] Family Member in Galveston County, Texas and was dismissed on October 24, 2016.

> On September 30, 2012, [appellant] was arrested for Assault [by] Caus[ing] Bodily Injury [to a] Family Member in Galveston County, Texas and was dismissed on March 13, 2013.

During pretrial, appellant objected to the admission of the extraneous offenses.  The court permitted admission of the two of the four extraneous offenses, but advised the State "[o]nce you get into it, we absolutely need to talk about making sure the jury understands for what purpose."  During opening statements, the parties approached the bench when the State told the jury "you'll hear about two prior, specific instances, where the defendant was charged with assaulting his wife."  Appellant's counsel told the judge that he would "keep the same running objections" to these references as improper character evidence. When the prosecutor resumed she stated that the jury would hear about Angelica's

12

relationship with appellant, and that Angelica "to this day, has decided to stay with him." Later, when the State's first witness, Deputy Paulk, testified that the Sheriff's office had been to appellant's residence "several times before" appellant objected and the parties approached the bench. Appellant moved for a mistrial on the basis that harm was done by reference to more than two prior offenses. The trial court denied the motion but the court instructed the jury to disregard the testimony, a cure which appellant's attorney agreed to be sufficient. Deputy Paulk later testified that it was "two instances we had been out there."

Angelica testified that she had called the police and reported appellant had assaulted her on those two prior occasions and that, "[b]y the smell and the look in his eyes, he was intoxicated to me." And in response to questions about why she pushed appellant, she explained "I was trying to get him away from me so he wouldn't hit me." When the State asked Angelica, "Why did you feel that he would hit you?" Angelica responded, "Because he's done it before." Angelica testified that she was afraid that the appellant was going to hit her because, as she put it, "Because he's done it before, *every* time we get in an argument." Appellant lodged no objection to this testimony. On cross examination, when asked about the offenses, she testified, "I don't know. I never asked anything. All I knew is that I – I was under the impression they were closed."

Deputy Popovich testified about the two prior incidents when Angelica had called the police because of the appellant, and he confirmed that the calls were made because the appellant had assaulted Angelica. Appellant lodged no objection to this portion of Deputy Popovich's testimony.[1]

---

[1] The State urges us to consider appellant's objection to the admissibility of the extraneous assaults waived, but in light of the extensive hearing outside the presence of the jury and appellant's running objection, we are inclined to review the matter on the merits. *Gutierrez v. State*, 585 S.W.3d 599, 614 (Tex. App.—Houston [14th Dist.] 2019, no pet.)("To preserve error regarding the admission of evidence, a party must object each time the inadmissible evidence is offered, obtain a running objection, or request a hearing outside the presence of the jury.")

## *Appellant's Procedural Complaints and the Record*

We address appellant's first two procedural points under this issue solely by reference to the appellate record. Appellant's first point is that the trial court denied him a right to voice his objection: "Defense counsel attempted to explain to the court that Rule 403 came into play and presented his argument with respect to the Rule's prerequisite balancing factors, however, the court was hearing none of this and refused to consider the argument of Defense Counsel."

The State offered the testimony of the two prior charges pursuant to Article 38.371(b) of the Code of Criminal Procedure before a jury had been selected and empaneled in the matter. The court took recesses, researched the law, and returned and promptly set out its ruling:

> . . .and here's going to be my ruling -- and I'll give you my ruling and let whoever wants to put their objection on the record.
>
> I'm going to allow the State to talk about those two offenses. That will assist the jury in understanding the relationship between the defendant and the victim. And that's it.

Liberally construing appellant's complaint, he has taken the last sentence literally. A review of the record shows, *that* wasn't really *it*. The ten plus pages in the reporter's transcript that followed show that the trial court allowed appellant's counsel the opportunity to object to the proffered testimony as being improper character evidence under Rules 402, 403, 404, 405, 608, 609 of the Texas Rules of Evidence, and under Article 38.371 of the Code of Criminal Procedure. The court restated its ruling several times as appellant's counsel presented his various grounds and engaged in discussion with appellee's counsel. The trial court restated its ruling *after* appellant presented arguments under all grounds and before the evidence was introduced. In short, the court heard all of appellant's counsel's

14

arguments.

Appellant's second procedural point is that "the trial court specifically relied on Article 38.371 and this Court's decision in [the *Gonzalez* case] as the talismanic gateway in determining the admissibility of the proffered evidence to the exclusion of the prerequisite Rules 404 and 403 analysis".

The court heard appellant trial counsel's argument addressing the rules he now contends that the trial court ignored, several cases interpreting those rules, and explained, "basically, in the case law and statutory interpretation, all say the same thing: 38.371 is not intended to replace or supplant the Rules of Evidence. That's why I'm making the objections under the Rules of Evidence on this." The trial court acknowledged trial counsel's explanation, remarked about the complicated nature of issue, and noted its consideration of the "Gonzales [sic] case".[2] After making its original ruling, the record shows that the trial court reconsidered and reaffirmed its rulings after giving due regard to the appellant's objections to the admission of the two prior assault charges, including consideration of admissibility under Rules 403 and 404(b).

Accordingly, we overrule appellant's first two complaints under its second issue.

*Did the trial court abuse its discretion in its admission of the extraneous offenses?*

We next consider appellant's substantive, third point, under his second issue, whether for the various reasons alleged by appellant, the court erred in admitting evidence of the two prior assaults. We review the trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of

---

[2] Though no citation was provided at the hearing, based on the context of the hearing, it appears the court and parties were referring to *Gonzalez v. State*, 541 S.W.3d 306, 311–12 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (addressing among other considerations, significant discussion of the convergence between art. 38.371 and Rule 404(b))

15

evidence was substantially outweighed by the danger of unfair prejudice, under an abuse of discretion standard. *Boudreaux v. State*, 631 S.W.3d 319, 332 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd); *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). This court will not substitute its own decision for that of the trial court. *Gonzalez v. State,* 544 S.W.3d at 370. If the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his correct ruling. *De la Paz v. State,* 279 S.W.3d 336, 343-44 (Tex. Crim. App. 2009).

Section (b) of Article 38.371 of the Texas Code of Criminal Procedure provides that in the prosecution of a case such as this—of a defendant for an assault of his wife—subject to the Texas Rules of Evidence," each party may offer testimony or other evidence of all relevant facts and circumstances that would assist the trier of fact in determining whether the defendant committed the offense, including testimony or evidence regarding the nature of the relationship between the defendant and the alleged victim." Tex. Code Crim. Proc. art. 38.371(b). Subsection (c), explains that the "article does not permit the presentation of character evidence that would otherwise be inadmissible under the Texas Rules of Evidence or other applicable law."

Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. Tex. R. Evid. 404(b)(1). However, evidence of a crime, wrong, or other act may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Tex. R. Evid. 404(b)(2). Rule 404(b) is a rule of inclusion rather than exclusion—it excludes only evidence that is offered solely for proving bad character and conduct in conformity with that bad character. *Dabney*

16

*v. State,* 492 S.W.3d 309, 317 (Tex. Crim. App. 2016).

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. "Rule 403 favors the admission of relevant evidence and caries a presumption that relevant evidence will be more probative than prejudicial." *Stone v. State*, 635 S.W.3d 763, 770 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd) *citing Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002). The Rule does not allow a trial court to exclude otherwise relevant evidence when that evidence is "merely prejudicial"—it must be unfairly prejudicial and substantially outweigh probative value. *Stone v. State*, 635 S.W.3d at 770. Evidence is "unfairly" prejudicial if it tends to suggest an improper basis for reaching a decision. *Reese v. State*, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000). A Rule 403 analysis generally balances the following four factors, though they are not exclusive: "(1) how probative the evidence is; (2) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence." *Colone v. State*, 573 S.W.3d 249, 266 (Tex. Crim. App. 2019).

The extraneous evidence admitted at trial consisted of testimony that the Sherriff's office had been called to appellant's house twice before on allegations that appellant had assaulted Angelica. Angelica confirmed that she had called the police on the two prior occasions because of an alleged assault, and Angelica contended that on August 15, 2019, she had pushed appellant to get him away from her because he had hit her in the past when the two argued. In accordance with the trial court's instructions, no significant details about either of the prior occurrences were portrayed to the jury. The trial judge instructed the jurors not to consider the extraneous-offense evidence as character-conformity evidence. Under these

circumstances, we do not find the trial court's evidentiary ruling to lie outside the zone of reasonable disagreement.

Though Angelica did not recant, ample evidence showed that she was unwilling to cooperate with law enforcement and the prosecution. Deputy Paulk testified that she requested that the police not take appellant to jail, Angelica maintained throughout trial that she wanted to drop charges against appellant, and did not want to testify against appellant. Under these circumstances, by allowing evidence of the prior extraneous acts to illustrate that the nature of the relationship between Angelica and appellant, the trial court acted within this court's interpretation of the convergence of Rule 404(b) and Article 38.371. *Gonzalez v. State*, 541 S.W.3d at 312.

The evidence of the prior assaults aided the jury in understanding why Angelica first pushed the appellant away from her when he got too close to her during their argument, could assist in reconciling why Angelica provided multiple versions of what precisely the appellant had done to her, why Angelica decided to drop charges against the appellant, and why Angelica did not want to testify against the appellant. *See id.*; *see also Thomas v. State*, 651 S.W.3d 102, 109 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd)(holding evidence of prior attacks admissible where the trial court reasonably could have concluded that the jury needed to understand the nature of the relationship between the complainant and the defendant to contextualize why the complainant would change her story so many times); *see also James v. State*, 623 S.W.3d 533, 545-46 (Tex. App.—Fort Worth 2021, no pet.).

The trial court reasonably could have concluded that the jury needed to understand the nature of the relationship between the Angelica and the appellant to place into context why she was unwilling to cooperate with law enforcement and

18

the prosecution prior to trial. *Thomas v. State*, 651 S.W.3d at 109. We have previously held that such use does not "contravene[] Rule 404(b)'s prohibition against use of character-conformity or propensity evidence because the State is not relying on the evidence to convince the jury of appellant's guilt on the basis that appellant was acting 'in accordance with [his] character.'" *Gonzalez v. State*, 541 S.W.3d 306, 312–13 (Tex. App.—Houston [14th Dist.] 2017, no pet.) citing Tex. R. Evid. 404(b). Other courts have considered such evidence admissible to reduce the possibility that the act in question was done with innocent intent and to reduce the possibility that the victim's injuries were accidental. *See Redmond v. State,* 629 S.W.3d 534, 544 (Tex. App.—Fort Worth 2021, pet. ref'd)(family violence case, collecting case in other contexts).

### III. CONCLUSION

Having overruled appellant's two issues, we affirm the judgment rendered by the trial court.


/s/    Randy Wilson
       Justice

Panel consists of Justices Wise, Poissant, and Wilson.

Publish — TEX. R. APP. P. 47.2(b).