**Opinion issued July 16, 2024**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-23-00322-CR

————————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**ALFREDO VALDEZ NUNEZ, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Case No. 1693922**

---

## MEMORANDUM OPINION

Appellee, Alfredo Valdez Nunez, was charged with continuous sexual abuse of a young child. Nunez moved to exclude a number of statements that the

complainant, A.M.,[1] made to the prosecutor the day before trial was scheduled to begin and that were provided to defense counsel on the eve of the trial setting. After several hearings, the trial court entered an order granting in part and denying in part Nunez's motion to exclude evidence.

Appellant, the State of Texas, raises three issues on appeal. First, it contends that the trial court abused its discretion in excluding the evidence because a civilian complainant's thoughts and memories are not in the constructive possession of the State and therefore not subject to disclosure prior to an interview being conducted. Second, it argues that the trial court may not suppress a child complainant's testimony regarding details of the offense alleged that she described in an interview with the prosecutor days before trial under a theory that the State failed to gather the information sooner. Third, the State contends that it does not have an affirmative duty under Texas Code of Criminal Procedure article 39.14 to interview witnesses at any particular time prior to trial to elicit further details of the offense. We reverse and remand.

**Background**

Nunez was charged by indictment with continuous sexual abuse of a young child on January 15, 2021. The indictment alleged:

---

[1] To protect the identity of the minor complainant, we will use her initials. *See* TEX. R. APP. P.9.8(b)(2).

[I]n Harris County, Texas, **ALFREDO VALDEZ NUNEZ,** hereafter styled the Defendant, heretofore on or about **November 24, 2012 continuing through November 24, 2017,** did then and there unlawfully, during a period of time of thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of indecency with child by contact, committed against A.M. on or about November 24, 2012, and an act constituting the offense of indecency with child by contact, committed against A.M. on or about November 24, 2017, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts.

Trial was set to begin on March 28, 2023.

Defense counsel served several discovery requests on the State. On October 23, 2020, Nunez's attorney filed a Request for Discovery, Disclosure, and Notice pursuant to Texas Code of Criminal Procedure Article 39.14. On December 1, 2020, substituted defense counsel filed a Notice of Appearance and Request for Compliance with Article 39.14 and Request to Preserve Evidence. On January 19, 2021, defense counsel filed a Request for Notice of State's Intention to Introduce Evidence of Other Crimes, Wrongs or Acts (Adjudicated or Unadjudicated) In Punishment Phase Pursuant to Texas Code of Criminal Procedure Article 37.07, a Request for Notice of Intent to Offer Extraneous Offenses and Convictions, a Motion for Discovery pursuant to Article 39.14, and a Motion for Production of Evidence Favorable to the Accused. On January 21, 2022, defense counsel filed Defendant's Motion for Discovery of Complainant's Records.

On February 27, 2023, the State filed its Notice of Intention to Use Extraneous Offenses and Prior Convictions, enumerating the following:

[O]n or about NOVEMBER 24, 2012 and on other, multiple occasions, pursuant to a continuing course of conduct, the Defendant did intentionally and knowingly:

- cause the penetration of the female sexual organ of A.M., hereafter called the Complainant, a person younger than fourteen years of age and not the spouse of the Defendant, by placing his finger in the female sexual organ of the Complainant.

- cause the sexual organ of A.M., a person younger than fourteen years of age and not the spouse of the Defendant, to contact the sexual organ of the Defendant.

- cause the sexual organ of A.M., a person younger than fourteen years of age and not the spouse of the Defendant, to contact the mouth of the Defendant.

- cause the sexual organ of A.M., a person younger than fourteen years of age and not the spouse of the Defendant, to contact the finger of the Defendant.

- engage in sexual contact with A.M., a child under the age of seventeen years and not the spouse of the Defendant, by touching the genitals of A.M. with the intent to arouse and gratify the sexual desire of the Defendant.

- engage in sexual contact with A.M., a child under the age of seventeen years and not the spouse of the Defendant, by touching the breast of A.M. with the intent to arouse and gratify the sexual desire of the Defendant.

- engage in sexual contact with A.M., a person younger than seventeen years of age and not the spouse of the Defendant, by touching through clothing the genitals of A.M. with the intent to arouse and gratify the sexual desire of the Defendant.

- engage in sexual contact with A.M., a person younger than seventeen years of age and not the spouse of the Defendant, by touching through clothing the breast of A.M. with the intent to arouse and gratify the sexual desire of the Defendant.

- with intent to arouse the sexual desire of the Defendant, have sexual contact with A.M., hereafter styled the Complainant, a child under the age of seventeen years and not his spouse, by having the Complainant touch the Defendant's genitals.

- with intent to arouse and gratify the sexual desire of the Defendant, intentionally and knowingly cause A.M., hereafter called the Complainant, a child younger than seventeen years of age and not the spouse of the Defendant, to expose the genitals of the Complainant, by removing the Complainant's clothing which covered her genitals.

On March 10, 2023, defense counsel filed Defendant's Request for Exculpatory and Mitigating Evidence; U-Visa Evidence.

On March 28, 2023, Nunez filed a motion to exclude evidence. The motion stated that on March 27, 2023, at approximately 8:35 p.m., the State sent statements of the complainant that included extensive, previously undisclosed information regarding the complainant's recollection of events, and that the information included dozens of previously undisclosed bad acts that fell under Texas Code of Criminal Procedure 38.37 and Texas Rules of Evidence 404(b) and 609. Specifically, the motion argued that the list (1) included illegal acts that allegedly took place in different rooms of Nunez's house, outside the house, and in Nunez's van and bedroom; (2) included allegations regarding how Nunez covered up his crime; and (3) was wholly contradictory to statements the complainant had made during her

5

multiple assessments at the Children's Assessment Center (CAC) in 2019. The motion requested that the complainant's statements to the prosecutor consisting of previously undisclosed information and provided to defense counsel on the eve of trial be suppressed and excluded.

The trial court held hearings on Nunez's motion to exclude evidence on March 28 and April 21 and 27, 2023.

**March 28 Hearing**

Defense counsel stated that on March 27, at 8:30 p.m., the day before trial was set to begin, the prosecutor sent notes from her interview with the complainant conducted the previous day which counsel alleged contained numerous previously undisclosed allegations against Nunez.[2] He argued that the statements provided to him on the eve of trial should be excluded under Code of Criminal Procedure Articles 38.37 and 39.14 and Rules of Evidence 404 and 609. The State responded that the information in the prosecutor's interview notes and sent to defense counsel contained no new allegations against Nunez, but rather only details of the allegations

---

[2]    At the March 28 hearing, defense counsel also stated that, on Saturday, March 25, 2023, the State provided him with a copy of an interview with the complainant containing information concerning an alleged alternate perpetrator that the defense had been requesting for three years and believed was mitigating, exculpatory, or both. The trial court later ruled that it would admit the information obtained in the March 25 interview concerning another alleged perpetrator. Because the State does not challenge the trial court's ruling concerning the evidence disclosed on March 25 related to an alleged alternate perpetrator in this appeal, we do not address this ruling in our opinion.

already disclosed in the videos of the forensic interviews of the complainant, the extended assessments, complainant's medical records from her SANE exam, and police reports. The State argued that its previously filed notice of intent to use extraneous offenses contained all the information that it is statutorily required to disclose under Code of Criminal Procedure Article 37.07—specifically, the complainant's name, the alleged offense, and the date and the county where the offense occurred—and that it is not required to provide every detail of each offense alleged. The State argued that it had provided all the evidence in its possession to defense counsel, and that the details contained in the interview notes were not in its possession until it interviewed the complainant at which time it immediately sent the prosecutor's notes to defense counsel.

Concluding that the State had a duty to disclose the statements to the defense under Code of Criminal Procedure Article 39.14, and that the State's late disclosure was tantamount to a non-disclosure, the trial court stated that it would exclude the complained-of testimony. Upon the State's motion, the trial court granted a thirty-day continuance. At the time of the hearing, there was no discovery order on file in the case.

**April 21 Hearing**

In the second hearing, the State argued that because defense counsel had had ample time to investigate the additional information disclosed on March 27 due to

7

the continuance, the State was entitled to introduce the complained-of testimony at trial through direct examination of the complainant. Defense counsel responded that the trial court did not grant a continuance simply to ensure that the defense had the statutorily required notice of the additional disclosures; rather, it had decided to exclude the statements. The trial court clarified its ruling, noting that it would allow those statements which the State could show had been disclosed to the defense prior to March 27, but that the statements which the State had disclosed for the first time on March 27 were excluded. The State indicated that it would provide a list of the complained-of testimony to the trial court and indicate which statements had been previously disclosed.

**April 27 Hearing**

At the April 27 hearing, defense counsel filed a brief in support of his motion to exclude evidence. At the hearing, he stated that the evidence provided to him on March 27, the day before trial, was "material evidence" and constituted consequential facts to the jury's determination of guilt and innocence as well as punishment. He argued that the State had sole access to the complainant's "memory bank" and, therefore, to the details of the alleged offense but, instead, it decided to wait until the eve of trial to obtain these factual statements from the complainant and disclose them to the defense. Defense counsel argued that the trial court had the authority and discretion to sanction the State for their malfeasance, and that the State

8

had repeatedly failed to timely comply with the defense's discovery requests, *Brady*[3] requests, and disclosure requests during the course of the proceedings.

In response, the State argued that there was no case law supporting the defense's argument, and that "[n]o one's memory banks are attributed to any party and never have been." It argued that Article 39.14 only addresses tangible evidence that already exists and is in the State's possession, and it does not address a person's thoughts and memories. It stated that the State does not have a duty to repeatedly investigate to ensure that it has obtained every possible statement the complainant may make, and that counsel could cross-examine and impeach the complainant with any inconsistent statements. The State argued that Rule of Evidence 609 was inapplicable because it only concerns convictions and none of the complainant's testimony related to Nunez's convictions. As to Rule 404(b), the State argued that the continuous sexual abuse of a child offense was alleged to have occurred over a five-year period and therefore the complained-of testimony concerned same transaction contextual evidence. The State argued that the statements did not exist until the date they were recorded and the prosecutor wrote them down in her notes, that the prosecutor disclosed them as soon as they were created, and the State cannot be forced to create something sooner or at any particular time. The State contended

---

[3]    *Brady v. Maryland*, 373 U.S. 83 (1963). The *Brady* rule requires the State to disclose evidence favorable to the defendant that is material either to guilt or to punishment. *See id.* at 87.

that Texas law holds that a continuance is the proper remedy for the State's failure to timely disclose evidence, not suppression of the evidence unless it was done willfully and intentionally.

At the conclusion of the hearing, the trial court stated that it would review the State's chart listing (1) each of the complained-of statements, (2) where the State asserted each statement had been previously disclosed, and (3) the defense's objections to each statement, and that it would issue a written order.

**Trial Court's Order**

On April 28, 2023, the trial court signed an order granting in part and denying in part Nunez's motion to exclude evidence. The court attached and incorporated by reference the following exhibit with the court's rulings on each of the complained-of statements:

# EXHIBIT 1

## Legend:

✓ New/untimely but Same/similar enough to meet notice requirement- NOT EXCLUDED

✗ New/untimely disclosure-EXCLUDED

• Notice timely given

11

| Statement from Motion to Exclude | Where previously provided | Defense Objections |
|---|---|---|
| Guest Room<br>- First happened in this room when she was 6-8 yoa<br>✓ | MEDICAL RECORDS: "When did that happen?" "Since I was small" THERAPY RECORDS: "Have you ever been touched by someone in a way that made you uncomfortable? Circles Y. Age of first occurrence. 5 or 6.; THERAPY RECORDS: Amy disclosed Alfredo Nunoz/uncle/AP fondled her vagina over and under clothing from age 5/6 until this summer at age 10. FI is outcry to oral on her vagina by AP<br>OFFICER NOTES: Someone touched me. Maybe 5 or 6.<br>CPS RECORD: Amy stated ever since she was small and she was like 5yr or 6yr and he touched me and told me not to tell anyone<br>CPS RECORDS: Amy stated when she was small the first time. | 6th Amendment Due Process, 404, 38.37 39.14 |
| - Abuse mostly happened in this room<br>✗ | Detail about the offense. She was never previously asked by anyone which room most abuse happened in. | 6th Amendment Due Process, 404, 38.37 39.14 |
| The abuse started happening in this room once there was furniture in it<br>✗ | Detail about the offense. She was never previously asked by anyone about furniture | 6th Amendment Due Process, 404, 38.37 39.14 |
| The abuse started happening - would happen 5 to 7 days a week<br>✓ | INTERVIEW WITH CW 12/22: Stated D did this to her "more than 100 times" and it would happened daily when he was around.<br>THERAPY RECORDS: How often did it occur? Often – every week<br>EA VIDEO: How often did it happen? Pretty often. | 6th Amendment Due Process, 404, 38.37 39.14 |
| When there was no furniture in the room D would abuse her in the living room, D's bedroom, outside, or behind his car<br>✗ | Detail about the offense. She was never previously asked by anyone about furniture. | 6th Amendment Due Process, 404, 38.37 39.14 |
| D didn't abuse her in this room until there was furniture in it Stated this room changed constantly<br>✗ | Detail about the offense. She was never previously asked by anyone about furniture | 6th Amendment Due Process, 404, 38.37 39.14 |
| D told her to accompany him to the (guest) room. Doesn't remember where she was in D's house when D asked her to accompany him to the room<br>✗ | INTERVIEW 12/5/22: Stated early in the mornings & when D was alone D would stay in his room and would ask her to come to his room.<br><br>INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." *Has never been asked to describe each of the 100 times that he sexually abused her.* | 6th Amendment Due Process, 404, 38.37 39.14 |

| | | | |
|---|---|---|---|
| ✗ | Once in the bedroom; D had her lay on the bed, on her back (at the edge of the bed) with her legs hanging off, | **CPS RECORDS:** Amy stated she was laid with her legs open.<br><br>**INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." *Has never been asked to describe each of the 100 times that he sexually abused her.* | |
| ● | she had still had the top half of her clothes on but the bottom | **CPS RECORDS:** Amy stated since she was small he took her pants off and her underwear | • Proper notice was given |
| ✓ | half of her clothes were off (naked from waist down) | **EA VIDEO:** Did he touch you over or under your clothes? Under. How did he get under your clothes? He took them off. Which clothes did he take off? My — I think it was pants. Did you have anything under your pants? Underwear. What happened to them? He took them off.<br><br>**INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." *Has never been asked to describe each of the 100 times that he sexually abused her.* | |
| ✗ | Sometimes D would take her clothes off, sometimes she would take them off | Detail about the offense. She was never previously asked by anyone who took her clothes off | 6th Amendment Due Process, 404, 38.37 39.14 |
| ✓ | D ~~would tell her to take off her clothes and~~ to not tell anyone | **OFFICER NOTES:** "Don't tell anyone" ✓ | |
| ✗ | D put her on the edge of the bed with her legs hanging off the bed and D was on his knees | **CPS RECORDS:** Amy stated she was laid with her legs open.<br><br>**INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." *Has never been asked to describe each of the 100 times that he sexually abused her.* | 6th Amendment Due Process, 404, 38.37 39.14 |
| ● | D would then use his tongue to "touch her bottom half" (vagina - skin to skin). | **THERAPY RECORDS:** FI is outcry to oral on her vagina by AP<br>**CPS RECORDS:** Amy stated yes someone put their mouth on her private part.<br>**CPS RECORDS:** Amy stated he licked her middle part<br>**EA Written Report:** Amy also disclosed Mr. Nunoz put his mouth on her private area<br>**OFFICER NOTES:** Said he also licked her private part "middle part" | • Notice was timely given and Statements are similar enough for reasonable notice |
| ● | Felt cold and weird | **INTERVIEW 12/5/22:** Once she went with D to his room, D would "touch" her and make her "feel weird"<br>**CPS RECORDS:** Amy stated her body felt weird.<br>**OFFICER NOTES:** Felt weird when he licked her<br>**EA VIDEO:** ...then he comes and starts touching me and I felt confused, weird, shocked | • notice was timely given and Statements are similar enough for reasonable notice |

13

| | | | |
|---|---|---|---|
| ✓ | Doesn't remember D using anything else but his tongue on her in this room | Gives several descriptions of oral sex. The only thing she doesn't specifically mention in the room. She was never previously asked this question. | 6th Amendment Due Process, 404, 38.37 39.14 |
| ✓ | D would tell her to "quiet down" or "to be quiet" | INTERVIEW 12/5/22: D would tell her to "not be too loud", "be quiet", and to "clean up" before it happened | |
| ✗ | First time she asked D if this was right? (referring to the abuse/what D was doing to her at that time) and D told her to just be quiet | INTERVIEW 12/5/22: D would tell her to "not be too loud", "be quiet", and to "clean up" before it happened | |

| | | | |
|---|---|---|---|
| ✗ | Once D was done he would tell her to put back on her clothes and then he would leave the room | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. | 6th Amendment Due Process, 404, 38.37 39.14 |
| ● | D asked her if it felt good | CPS RECORDS: AU asked OV if it felt good when he touched her. | |
| ✗ | Livingroom - Happened around same age or a little older as the incidents in the guest room | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | - D and her would be on the couch watching TV (sometimes there would be family members on the couch with them) Thinks Nickelodeon was on TV. | EA VIDEO: CW described being in the corner charging her phone and playing roblox when defendant came in and touched her but cousins didn't see because they didn't look up from the screen. | 6th Amendment Due Process, 404, 38.37 39.14 |
| ✗ | D would have a blanket with him and he would cover them up with the blanket. D would sit down beside her and put the blanket over both of them, then D would put his hand underneath the blanket to touch her (vagina) | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her.<br><br>She was never asked previously about being under a blanket. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ● ✗ | D would touching her both over and under the clothes ~~D would be reaching over, like he was "resting his hand there in between horizon) to touch her~~ | EA REPORT: Amy disclosed that her uncle touched her vagina and breasts on multiple occasions over and under her clothing.<br>● Further details regarding touching over and under clothes on this incident are allowed as notice was proper; the redacted portion's new disclosures are excluded) | 6th Amendment Due Process, 404, 38.37, 39.14 |

14

| | | | |
|---|---|---|---|
| ✗ | Believes she was wearing shorts at the time | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. This is a detail of the charged offense that she has never previously been asked about. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ● | D was touching her over her clothes Doesn't remember exactly how he would touch her | **EA REPORT:** Amy disclosed that her uncle touched her vagina and breasts on multiple occasions over and under her clothing. **CPS RECORDS:** Amy stated the first time was under clothes. Amy stated second over clothes. | ● Notice of touching over and under clothes sufficient ✓ Further details are allowable |
| ✗ | but remembers D's hands would feel rough; She could feel both his hands and fingers | Detail about the offense. She was never previously asked by anyone who took her clothes off | |
| ✗ | Stated D hands were "everywhere" on her vagina | Detail about the offense. She was never previously asked by anyone what part of her vagina was touched | 6th Amendment Due Process, 404, 38.37, 39.14 |

| | | | |
|---|---|---|---|
| ✓ | D would ask her if it felt good ● – other ppl weren't around when he asked her this | **CPS RECORDS:** AU asked OV if it felt good when he touched her. | ✓ ● |
| ✗ | Stated it happened here more than once | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | Outside D's house - When the abuse happened outside it would happen either behind the car, on the pouch, or on the side of the house Porch; | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | on your right there would be one long chair/bench/sofe on the porch o D and her would be on the long chair/bench/sofa | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ | Basically the same thing would happen as when it would happen in the living room | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |

| | | | |
|---|---|---|---|
| ✗ | One time she was staying outside because she didn't want to see D (she was elementary school at the time) She was alone outside, looking away from the house | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | She heard the door open and D came out of the house, She just stayed there and kept looking at the street | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | There was already a blanket there and when D sit down with her, he pulled the blanket over them (D was on her right side) D then started touching her on top of her vagina with his hand, over her clothes | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | This didn't go on for that long because either someone arrived or D had to go do Something. | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |

| | | | |
|---|---|---|---|
| ✗ | This didn't happen very often in this location | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ ✗ | D would also ask her if it felt good and she would reply yes because she was afraid that D might do something else "to make her feel good" if she said no. She was also afraid that D might get mad and force her to do something else, harm her, or punish her for it | CPS RECORDS: AU asked OV if it felt good when he touched her. Whether he asked if it felt good- previously disclosed. Notice proper The reply and what she was afraid of when/why she replied- Newly disclosed- Excluded | 6th Amendment Due Process, 404, 38.37, 39.14 |

16

| | | |
|---|---|---|
| ✗ | A time she remembers; She was still in elementary but a little older than some of the other incidents<br>o She was just walking on the walkway beside D's home and she saw D by his car<br>and he pulled her over to him (not aggressively, asked her to join him) | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ | D touched her vagina with his hand, on top of her clothes. She doesn't remember exactly how it started off. | **EA REPORT:** Amy disclosed that her uncle touched her vagina and breasts on multiple occasions over and under her clothing.<br>**INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have<br>happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | They were both standing up with D in front of her and her back resting against the car (back of the car – White Van) D would reach over to her to touch her – he would be close to her. She was wearing shorts or pants | **EA REPORT:** Amy disclosed that her uncle touched her vagina and breasts on multiple occasions over and under her clothing.<br>**INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ ✗ | Sometimes D would reach into her pants/shorts and touch her (vagina) inside her clothes but on top of her underwear<br>She remembers D touching her as if "he was in a rush and had to do other stuff" | **EA REPORT:** Amy disclosed that her uncle touched her vagina and breasts on multiple occasions over and under her clothing.<br>**INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about abuse that might have happened outside. | 6th Amendment Due Process, 404, 38.37, 39.14 |

| | | |
|---|---|---|
| ✗ | She would feeling his hands touching her – His hands were moving fast. She remembers D's hand caressing her vagina (top part of the<br>inside of his palm) – D would move his hand, rubbing side to side | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked how his hands moved. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ | She felt uncomfortable when this happened | **THERAPY RECORDS:** "Have you ever been touched by someone in a way<br>that made you uncomfortable? Circles Y. Age of first occurrence. 5 or 6.; | |

17

| | | |
|---|---|---|
| ✗ | Stated sometimes while this was happening outside she would be called to from the porch by her cousin or another family member | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked how his hands moved. | 6<sup></sup> 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | Side of House – near bushes; Time she remembers; she was 6-8 yoa and was playing hide and seek with her Cousin; She was hiding between the bushes on the side of the house (This was the area she used to hide at during hide and seek) | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about a time when playing hide and seek. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | Somehow D found her there – D came from the back and around to the side of the Ho. use where she was D started " being touchy again" – "Fondling" her § D would hug and touch her "everywhere" | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about a time when playing hide and seek. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | She was standing, resting her back against the side of the house – doesn't remember how D's body was positioned when he touched her | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked about a time when playing hide and seek. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ | She remembers D using his hands to touch her vagina – over the clothes. D was rubbing her vagina in a "circle" motion – it would go on till her cousin would find her. | **EA REPORT:** Amy disclosed that her uncle touched her vagina and breasts on multiple occasions over and under her clothing.\n\n**CPS RECORDS:** Amy stated the first time was under clothes. Amy stated second over clothes. | 6th Amendment Due Process, 404, 38.37, 39.14 |

18

| | | |
|---|---|---|
| ✗ Her cousin would never see what D was doing to her because her cousin would be loud and D would hear her cousin coming. Cousin would be really loud saying things like "where are you…"D would stop and be very "cheerful" when her cousin would interrupt him touching CW | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Has never been asked to describe each of the 100 times that he sexually abused her. Was never previously asked what her cousin was doing. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ Stated it happened quite a few times on the side of the house (happened a little more than the times it happened beside the car & on the porch) | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ D's bedroom - Happened here more than one time – it happened either less or equal to the amount of times it happened in the other bedroom (guest room) | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ • First time happened when she was 6 yoa<br><br>● Previously disclosed- Notice requirement met | MEDICAL RECORDS: "When did that happen?" "Since I was small" THERAPY RECORDS: "Have you ever been touched by someone in a way that made you uncomfortable? Circles Y. Age of first occurrence. 5 or 6.; THERAPY RECORDS: Amy disclosed Alfredo Nunoz/uncle/AP fondled her vagina over and under clothing from age 5/6 until this summer at age 10. FI is outcry to oral on her vagina by AP OFFICER NOTES: Someone touched me. Maybe 5 or 6. CPS RECORD: Amy stated ever since she was small and she was like 5yr or 6yr and he touched me and told me not to tell anyone CPS RECORDS: Amy stated when she was small the first time. | ● |
| ✗ She had just been dropped off in the early morning (around 5 am/before 7 am). She was dropped off with her older brother. o She would be dropped off at D's house in the morning to wait for the bus to School. They were so sleepy that they laid on the couch | INTERVIEW 12/5/22: Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |

19

| | | | |
|---|---|---|---|
| ✗ | Once in D's bedroom; D closed the door after they entered the room. remembers the bed took up most of the room and the room was messy | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✓ | She would lay on the bed and D would take off her clothes and then he would lick her vagina with his tongue. She would be on the edge of the bed, on her back, with her legs hanging off while D was on his knees off the bed (just like when it happened in the guest room) | **INTERVIEW 12/5/22:** Stated early in the mornings & when D was alone D would stay in his room and would ask her to come to his room.<br><br>**THERAPY RECORDS:** FI is outcry to oral on her vagina by AP<br>**CPS RECORDS:** Amy stated yes someone put their mouth on her private part.<br>**CPS RECORDS:** Amy stated he licked her middle part<br>**EA Written Report:** Amy also disclosed Mr. Nunoz put his mouth on her private area<br>**OFFICER NOTES:** Said he also licked her private part "middle part" | •   Notice requirement met- prev. disclosed. Not excluded. |
| ✗ | She would feel cold and felt his tongue moving around in a "circle" motion and would his tongue would go inside her vagina. When D stopped he would put her clothes back on and then would tell her to sleep on his bed | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | - Happened every day when she would go to D's home to wait on the bus to school (happened in the mornings for around a year). Eventually her mom or dad got a car and started taking her to school. So she didn't have to go over to D's in the morning to ride the bus anymore. | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |

| | | | |
|---|---|---|---|
| ✗ | Last time<br>- Last time it happened was the same week that she told her cousin (fourth grade). Happened on a "festive" day – cold outside – had dancers outside; She went inside because it was cold outside, she was at the table maybe on her phone; She heard someone come in and saw it was D, then D came over and started licking her ear (D was to her left side when he did this) This is the only time she remembers D licking her ear | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Never described all 100 times. | 6<sup></sup> |
| ✗ | Then D and her went into the room that it mostly happened in (Guest room); D locked the | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| | door behind him, she laid on the bed and took off her clothes, Then D used his tongue to touch her (vagina); Thinks everyone was outside when this happened | | |
| ✓ | D asked her if it felt good, she paused for a moment and said yes | **CPS RECORDS:** AU asked OV if it felt good when he touched her. | • Notice requirement met |
| ✗ | This went on till someone was calling for her (remembers hearing a female voice call for her); D stopped and she put her clothes back on D unlocked the door and left the room; She stayed in the room | **INTERVIEW 12/5/22:** Stated D did this to her "more than 100 times." Never described all 100 times. | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ | Other abuse details<br>-D would go into the restroom when she was using the restroom – she doesn't remember him touching her in the restroom – D would wash his hands and then leave out of the restroom | Detail of offense | |

21

| | | |
|---|---|---|
| ✗ Stated the abuse was never consistently only in one area of D's home. It could happen in one area of D's residence (outside, guest room, D's bed room, Living room) one day and then could happen in different area on a different day. | Detail of offense | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ how long the abuse went on during a single incident, had to do with how many family members were around | Detail of offense | 6th Amendment Due Process, 404, 38.37, 39.14 |
| ✗ It would continue until she & D would hear someone asking about where she was; If no one was around D would abuse her until he was done (around 30 min) | Detail of offense | 6th Amendment Due Process, 404, 38.37, 39.14 |

The State filed its Notice of Appeal and moved for a stay of the proceedings on April 29, 2023.[4]

**Discussion**

The States raises the following three issues on appeal: (1) whether a civilian complainant's thoughts and memories are in the constructive possession of the State and therefore subject to disclosure before an interview has been conducted, (2) whether the trial court may suppress a child complainant's testimony regarding details of the offense she described in an interview given to a prosecutor a few days before trial under the theory that the State failed to gather the information sooner, and (3) whether the State has an affirmative duty under Code of Criminal Procedure Article 39.14 to interview witnesses at any particular time prior to trial in order to elicit further details of the offense. Before we reach these issues, however, we first address Nunez's request that we hold we lack jurisdiction to consider the State's appeal.

**Appellate Jurisdiction**

Texas Code of Criminal Procedure Article 44.01(a) provides: "The state is entitled to appeal an order of a court in a criminal case if the order: . . . (5) grants a motion to suppress evidence, a confession, or an admission, if jeopardy has not

---

[4]    This Court granted the State's emergency motion to stay proceedings pending disposition of this appeal on May 2, 2023.

attached in the case and if the prosecuting attorney certifies to the trial court that the appeal is not taken for the purpose of delay and that the evidence, confession, or admission is of substantial importance in the case . . . ." TEX CODE CRIM. PROC. art. 44.01(a)(5). Here, the trial court granted in part and denied in part Nunez's motion to exclude evidence. There is nothing in the record showing that jeopardy has attached in the case. And, the District Attorney certified that the appeal is not being sought for the purposes of delay and that the suppressed evidence "is of substantial importance" in this case.

Nevertheless, Nunez asks this Court to hold that it does not have jurisdiction to consider the State's appeal according to the plain language of Article 44.01 because the trial court's ruling did not prevent the State from moving forward with prosecuting him. He argues that to permit the State to appeal evidentiary rulings such as this one interferes with the trial court's inherent power to control its own docket and trial settings. The State responds that the Court of Criminal Appeals's decision in *State v. Medrano*, 67 S.W.3d 892 (Tex. Crim. App. 2002) resolved any question about whether this Court has appellate jurisdiction over the issues raised by the State in this appeal.

In *Medrano*, the defendant was charged with capital murder and moved to suppress the testimony of a fourteen-year-old witness to the alleged crime on the grounds that its admission violated numerous provisions of the United States and

24

Texas Constitutions. *See id.* at 895–96. The trial court granted the motion to suppress, and the State appealed certifying that it could not prosecute the appeal without the child's testimony. *Id.* at 895. The El Paso Court of Appeals dismissed the State's appeal for want of jurisdiction concluding that "although constitutional implications may be present in this decision, [it was not] a 'suppression' in the sense contemplated by Texas Code of Criminal Procedure, Article 44.01(a)(5) and the case law interpreting it." *Id.*

On the State's petition for discretionary review, the Court considered whether Article 44.01(a)(5) permits the State to bring a pretrial appeal of an adverse ruling on a motion to suppress evidence when the trial court does not conclude that the evidence was "illegally obtained." *Id.* at 894. The Court noted that although it had held in *State v. Roberts*, 940 S.W.2d 655 (Tex. Crim. App. 1996) that the State could not appeal a pretrial evidentiary ruling unless the defendant claimed that the evidence was "illegally obtained," neither the language of the statute nor legislative intent supported such a limitation and that the rule in *Roberts* had proved unworkable in practice. *Id.* It therefore overruled *Roberts* and held that under Article 44.01(a)(5) "the State may appeal an adverse ruling on *any* pretrial motion to suppress evidence as long as the other requirements of the statute are met." *Medrano*, 67 S.W.3d at 903.

Citing the *Medrano* court's recognition that the purpose of Article 44.05 is "to permit the pretrial appeal of erroneous legal rulings which eviscerate the State's ability to prove its case," *id.* at 895–96, Nunez argues that the *Medrano* court intended for the State's right to appeal to be limited to those exclusions of evidence that would prevent the State from moving forward with prosecution. The State responds that the trial court's order excluded "huge swaths of the child's testimony about the charged offense" describing the "when, where, and how" of the alleged sexual abuse. It argues that, in doing so, the ruling effectively gutted the evidence needed to prove the charged offense of continuous sexual abuse of a young child. It also contends that a child complainant could not be expected to parse through her testimony to figure out what she could and could not testify to under the trial court's order.

The plain language of Article 44.05(a) does not require that the exclusion of evidence prevent the State from being able to move forward with prosecuting a defendant. Rather, it requires that the prosecuting attorney certify that the evidence is of "substantial importance" in the case. TEX CODE CRIM. PROC. art. 44.01(a)(5). That was done here.[5] In light of Article 44.05(a) and the holding in *Medrano*, we

---

[5]     In *State v. Redus*, the Court of Criminal Appeals stated that a defendant may not challenge the verity of the prosecutor's certification of the "substantial importance" of the evidence suppressed "because the plain language of the statute neither requires nor permits it." 445 S.W.3d 151, 156 (Tex. Crim. App. 2014). Instead, "[t]he prosecutor's promise of importance is sufficient." *Id.*

conclude that we have jurisdiction over the State's appeal, and we decline the invitation to hold otherwise.

## Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016). A trial court abuses its discretion if the decision falls outside the zone of reasonable disagreement. *Id.* at 83. Before we may overrule a trial court's evidentiary decision, we must hold that the trial court's ruling was "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Id.* (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008)). We will uphold the trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De la Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## State's Duty to Disclose

The State contends that the trial court fundamentally misunderstood the requirements for discovery and suppression based on a purported discovery violation. It argues that Article 39.14(a), which was the basis of the trial court's exclusionary ruling, addresses tangible items that already exist and confines the release of evidence to that evidence within the possession, custody, and control of the State or a State actor. The State argues that the complainant's thoughts and memories satisfy neither of these requirements. It reasons that because Article 39.14

27

did not apply to the complainant's thoughts and memories until the complainant was interviewed and her statements were written or recorded, no discovery violation occurred pursuant to Article 39.14(a) and the trial court abused its discretion in finding otherwise.

Nunez responds that the issue before this Court is not the prosecutor's physical notes or even the child's memory but, rather, the State's failure to interview its main witness prior to announcing ready for trial and then attempting to force the defense to move for a continuance while still expecting that evidence to be admissible at trial. Although Nunez acknowledges that the trial court does not have the authority to direct the State's prosecution or dictate how and when it should interview its witnesses, he argues that trial courts have broad discretion to manage and control their dockets which includes imposing and enforcing discovery deadlines. Nunez asserts that having requested notice of the State's intention to use extraneous offense evidence more than six months before trial, he was entitled to assume that the State did not intend to use such evidence because the State had not provided the requisite notice by the eve of trial. He contends that whether the trial court's authority stems from its inherent power to control its own docket, Articles 39.14 or 38.37, the Due Process Clause, or the Rules of Evidence, the court did not abuse its discretion in excluding the complainant's untimely disclosed allegations.

28

# Code of Criminal Procedure Article 39.14

Texas Code of Criminal Procedure Article 39.14, also known as the Michael Morton Act, governs discovery in criminal cases. *See* TEX. CODE CRIM. PROC. art. 39.14. "[I]t addresses "what the State must produce and when the State must produce it." *In re State ex rel. Skurka*, 512 S.W.3d 444, 453 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). The statute provides, in relevant part:

> (a) [A]s soon as practicable after receiving a timely request from the defendant the state shall produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant, of any offense reports, any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers but not including the work product of counsel for the state in the case and their investigators and their notes or report, or any designated books, accounts, letters, photographs, or objects or other tangible things not otherwise privileged that constitute or contain evidence material to any matter involved in the action and that are in the possession, custody, or control of the state or any person under contract with the state.

> . . . .

> (h) Notwithstanding any other provision of this article, the state shall disclose to the defendant any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the guilt of the defendant or would tend to reduce the punishment for the offense charged.

> . . . .

> (k) If at any time before, during, or after trial the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or the court.

TEX. CODE CRIM. PROC. art. 39.14(a), (h), (k).

**A.      Exclusion of Evidence Based on Article 39.14**

A review of the record shows that the trial court based its ruling excluding evidence on its finding that the State had failed to comply with the requirements of Article 39.14.

At the March 28 hearing, the following exchange took place:

[The State]: And Judge, so I am clear, what pieces of discovery does the Court believe we had in our possession that we didn't turn over when we announced ready?

The Court: Well, I don't believe that there was information that you had in your possession. I believe that the State failed to carry out its duty of affirmatively—affirmative duty of going after information that could be probative, could be exculpatory, could be mitigating, could be Brady. And so if [the prosecutor] believed that possibly information existed in the complainant's memory, then she had a duty to ferret that out prior to announcing ready.

When the prosecutor responded that the court was placing an unfair burden on the State, the trial court stated:

I am not putting an unfair burden on the State. What I am doing is following the law and I believe that in the law I'm going to point your attention to where I'm leading and it's 39.14. And I believe that this information doesn't have to be relevant in the sense of—relevant inadmissible. It just has to trigger the 39.14 disclosure, which my understanding is defense counsel requested almost a year ago the 39.14 and the motion for discovery was filed January of 2021.

. . . .

However, this is a novel—I think it's a novel concern as to whether or not the complainant's memory is in the possession or in the control of the State. Well, certainly your witness and certainly the witness that

you're relying on to be—to put your case in chief on. And so if that person is the person who has the information that everybody was on notice of, but you only had access to, I think that the duty of the prosecutor['s] office is to get that information turned [i]n. And I believe that it was then practical a long time before March 25th and March 27.

When the prosecutor noted that, for purposes of *Brady*, information in the possession of the complainant is not in the possession of the State, the court stated:

THE COURT: We are not talking about Brady necessarily. Brady could be a part of it, but we are not talking about Brady necessarily. We are talking about 39.14.

Later, at the April 27 hearing, the trial court stated:

Okay. Well, here's what I wanted to kind of make clear so that we know what we are arguing about right now. I had already found that the disclosures from the 25th and the 27th were late. I already disclosed that I believe the State had a duty—I'm sorry, I've already found that the State had a duty to affirmatively seek out information that has the potential to be mitigating, has the potential to be exculpatory, has the potential to be of consequence. I mean, because that's my understanding of the 39.14 requirements on the State.

. . . .

Your office, the Harris County District Attorney's Office is under the requirements of 39.14 of disclosure and all of their agents.

When the State responded that it did not violate Article 39.14 because the complained-of testimony was not in its possession prior to March 27, the State disclosed it as soon as they received it, and the complainant's memory is not an item contemplated by the statute, the following exchange took place:

31

[The Court]: Do you believe that deliberately blinding yourself or willfully ignoring the opportunity or the information absolves the State of the duty to disclose under 34.19?

When the State reiterated that that it had no obligation to disclose information that is not in its possession, the trial court stated:

Well, then what you're saying is that the information with which the jury can convict someone, because it is not tangible, is not governed under 39.14. And I have to wholly reject that.

## B.     Discovery of "Tangible Items" in State's Possession

The State contends that the information at issue in this case—the complainant's thoughts and memories—does not constitute the type of information that is contemplated by Article 39.14 because they are not "tangible things" that "were in the possession, custody, or control of the State." *Id.* It argues that Article 39.14 applied only once the prosecutor or someone under contract with the State received them, and the prosecutor released her written notes to the defense the same day she received the information.

Article 39.14(a) requires the State, upon request by the defense and as soon as practicable, to "produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant" of a list of items, including: (1) offense reports; (2) any designated documents, papers, written or recorded statements of the defendant or a witness, including witness statements of law enforcement officers; and (3) any designated books, accounts, letters,

32

photographs, or objects, or other *tangible* things not otherwise privileged. *See id.* (emphasis added). The complainant's thoughts and memories do not fit into any of the categories required to be produced by the State under Article 39.14(a). *See Hicks v. State*, 606 S.W.3d 308, 324 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (concluding Article 39.14 did not require State to disclose information that prosecutor was related to prospective juror because it was not type of information that statute was designed to require prosecutor to make available to defense). Moreover, the information at issue was not in the State's possession, custody, or control at the time it was in the complainant's mind. Rather, Article 39.14's provisions were triggered when the State received the information and reduced it to written form. *See In re Stormer*, No. WR-66,865-01, 2007 WL 1783853, at *3 (Tex. Crim. App. Jun. 20, 2007, order) (per curiam) (not designated for publication) (stating that Article 39.14 "is specifically limited to the discovery of pre-existing documents and tangible items that are in the State's possession" and does not give trial court authority to order State "to create a document that does not currently exist"); *Coleman v. State*, 577 S.W.3d 623, 635 (tex. App.—Fort Worth, 2019, no pet.) (holding State did not violate defendant's Article 39.14 rights by not disclosing identity and criminal history of informant where record demonstrated that State did not possess information and thus had nothing to disclose).

## C.     Affirmative Duty to Seek Information

The State next argues that Article 39.14 does not impose an affirmative duty on the State to interview a witness at any particular time and seek out information outside the State's possession, and that the trial court erred in finding that it did. Nunez responds that the State violated Article 39.14 when it failed to interview its main witness prior to announcing ready for trial and then attempted to force the defense to move for a continuance while still expecting that evidence to be admissible at trial.

During the hearings, the prosecutor argued that the State was not required to give the defense all of the details of the charged offense because the complainant was not a state actor and her thoughts and memories were not in the possession of the State. The trial court stated, "But I'm holding you responsible for the affirmative duty to gather the information," and "if [the prosecutor] believed that possibly information existed in the complainant's memory, then she had a duty to ferret that out prior to announcing ready."

As discussed above, under Subsection (a), the State is required to disclose tangible items that already exist and that are within the possession, custody, and control of the State. Subsection (h) of Article 39.14 requires the State to disclose to the defendant "any exculpatory, impeachment, or mitigating document, item, or information in the possession, custody, or control of the state that tends to negate the

34

guilt of the defendant or would tend to reduce the punishment for the offense charged." Subsection (k) states that "[i]f at any time before, during, or after trial the state discovers any additional document, item, or information required to be disclosed under Subsection (h), the state shall promptly disclose the existence of the document, item, or information to the defendant or the court." *See* TEX. CODE CRIM. PROC. art. 39.14 (h), (k). None of these provisions, however, imposes an affirmative duty on the State to seek out and disclose information that is outside the State's possession or create evidence that does not exist. *In re State ex rel. Best*, 616 S.W.3d 594, 600 (Tex. Crim. App. 2021) (orig. proceeding) ("But whatever may be the permissible scope of a trial court's discretion over matters of pre-trial discovery, it does not extend to the point of ordering the State to create or generate evidence that does not otherwise exist. This Court has plainly said that a trial court does not have the authority to do *that*."); *In re State*, 659 S.W.3d 1, 14 (Tex. App.—El Paso 2020, no pet.) (noting that disclosure requirements of Article 39.14 are limited to pre-existing documents and items already in State's possession; trial court cannot order State to create document that is not already in its possession, custody, or control, even after passage of Michael Morton Act); *Coleman*, 577 S.W.3d at 634 ("Article 39.14 does not, however, give the trial court the authority to order the State to create a document that is not already in its possession, custody, or control.") (citing *In re*

*State ex rel. Munk*, 448 S.W.3d 687, 692 (Tex. App.—Eastland 2014, orig. proceeding)).

## D. Inherent Authority to Control Docket

In his brief, Nunez acknowledges that it is "uncontested that the trial court lacks authority to direct the State's prosecution or dictate how and when it should interview witnesses." He argues, however, that trial courts are vested with discretion to manage and control their dockets, which necessarily includes imposing and enforcing discovery deadlines.

We agree that trial courts have broad discretion in managing the course of a trial generally. *See Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005); *Taylor v. State*, 255 S.W.3d 399, 402 (Tex. App.—Texarkana 2008, pet. ref'd) (noting that "trial court is vested with broad discretion to manage and control its docket in order to promote the orderly and efficient administration of justice while protecting the statutory and constitutional rights of all persons who come before the court"). Every court has the "inherent power, exercisable in its sound discretion, consistent with the constitution and statutes," to control the disposition of the cases on its docket with "economy of time and effort." *In re State ex rel. Skurka*, 512 S.W.3d at 452. However, the record reflects that the trial court had not imposed any discovery deadlines prior to the time the State obtained and disclosed the information. And no discovery order existed when the trial court stated that it would

suppress the complained-of evidence. The record reflects that the trial court did not sign a discovery order in the case until April 4, 2023. Moreover, a trial court's inherent power to control disposition of cases on its docket must nevertheless be "consistent within the constitution and statutes." *Brager v. State*, No. 0365-03, 2004 WL 3093237, at *2 (Tex. Crim. App. Oct. 13, 2004) (not designated for publication); *see also State v. Patrick*, 86 S.W.3d 592, 596 (Tex. Crim. App. 2002) (refusing to conclude that trial court has inherent jurisdiction or authority to perform act not conferred on trial court by constitution or by statute). Stated differently, the trial court's authority to order discovery is constrained by the express language of Article 39.14. As such, we conclude that the trial court did not have the inherent power to dictate how and when the State should interview the complainant so that it would be required to disclose the prosecutor's notes taken during the interview. *In re State ex rel. Best*, 616 S.W.3d at 600 ("But whatever may be the permissible scope of a trial court's discretion over matters of pre-trial discovery, it does not extend to the point of ordering the State to create or generate evidence that does not otherwise exist.").

**E.    Other Grounds for Exclusion of Evidence**

Nunez also objected to the additional disclosures on the grounds that their admission would violate the Due Process Clause of the Sixth Amendment, Texas Rules of Evidence 404 and 609, and Code of Criminal Procedure Article 38.37. We consider each of these grounds below. *See De la Paz*, 279 S.W.3d at 344 ("[I]f the

37

trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed . . . .").

**1.      Sixth Amendment**

The Sixth Amendment of the United States Constitution states:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. CONST. amend. VI. Here, the only provisions which could arguably support the trial court's rulings are (1) Nunez's right to be informed of the nature and cause of the accusation against him, and (2) his right to confront the witnesses against him.

**a. Nature and Cause of Accusation**

Nunez was indicted for continuous sexual abuse of a young child on January 15, 2021. The indictment alleged:

> [I]n Harris County, Texas, **ALFREDO VALDEZ NUNEZ,** hereafter styled the Defendant, heretofore on or about **November 24, 2012 continuing through November 24, 2017,** did then and there unlawfully, during a period of time of thirty or more days in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of indecency with child by contact, committed against A.M. on or about November 24, 2012, and an act constituting the offense of indecency with child by contact, committed against A.M. on or about November 24, 2017, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts.

The Court of Criminal Appeals has recognized that, in most cases, a charging instrument that tracks the statutory text of an offense is sufficient to provide a defendant with adequate notice. *State v. Zuniga*, 512 S.W.3d 902, 905 (Tex. Crim. App. 2017) ("[G]enerally, when an indictment tracks the language of a penal statute, it will satisfy constitutional and statutory requirements."); *State v. Barbernell*, 257 S.W.3d 248, 250 (Tex. Crim. App. 2008). Texas Penal Code section 21.02, which sets forth the elements of the charged offense, provides, in relevant part:

(b) A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is:

(A) a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense . . . .

(c) For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:

. . .

(2) indecency with a child under Section 21.11(a)(1), if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child[.]

TEX. PENAL CODE § 21.02. Here, the indictment tracked the elements of Penal Code section 21.02. Nunez was provided with constitutionally sufficient notice.

**b. Right to Confront Witnesses**

The Due Process Clause also guarantees to the accused the right to confront witnesses. U.S. CONST. amend. VI. Here, there is nothing in the record indicating that the complainant would not be present at trial and subject to cross-examination. Indeed, in arguing that the complainant should be able to testify to the statements provided on March 27, the State repeatedly noted that defense counsel could cross-examine and impeach her with any inconsistent statements. The Sixth Amendment's Due Process Clause does not support the trial court's ruling to exclude evidence.

**2. Code of Criminal Procedure Article 38.37**

In addition to the Sixth Amendment, Nunez also objected to admission of the statements on the grounds that it violated Article 38.37, "Evidence of Extraneous Offenses or Acts."

"An extraneous offense is any act of misconduct, whether resulting in prosecution or not, which is not shown in the charging instrument and which was shown to have been committed by the accused." *Martinez v. State*, 190 S.W.3d 254, 262 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (internal quotations omitted). Generally, Texas Rule of Evidence 404(b) prohibits the admission of extraneous offense evidence to prove a person's character or to show that the person acted in conformity with that character. *See* TEX. R. EVID. 404(b). But when a defendant is being prosecuted for the offense of continuous sexual abuse of a young child,

evidence that the defendant has committed one or more of the enumerated sexual offenses against a child, including the offense of indecency with a child, sexual assault of a child, or aggravated sexual assault of a child, such evidence may be admitted for any bearing the evidence has on relevant matters, including the state of mind of the defendant and the child, the previous and subsequent relationship between the defendant and child, and the character of the defendant and acts performed in conformity with the character of the defendant. TEX. CODE CRIM. PROC. art. 38.37, §§ 1(b), 2(b). Section 3 of Article 38.37 provides: "The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial." TEX. CODE CRIM. PROC. art. 38.37, § 3.

The State filed its Notice of Intention to Use Extraneous Offense and Prior Convictions on February 27, 2023. Relevant here, the notice stated that the State intended to introduce in its case-in-chief evidence of other crimes, wrongs, or acts committed by Nunez against the complainant for its bearing on relevant matters, including, but not limited to, the state of mind of the defendant and the child, the previous and subsequent relationship between the defendant and the child, and the character of the defendant or that the defendant acted in conformity with that character. And, as set forth above, the notice also enumerated the extraneous acts

41

that the State intended to introduce at trial. Specifically, the notice included

allegations that appellee intentionally and knowingly:

- caused penetration of the complainant's sexual organ with appellee's finger,

- caused appellee's sexual organ to contact the complainant's sexual organ,

- caused the complainant's sexual organ to contact appellee's mouth,

- caused the complaint's sexual organ to contact the complainant's finger,

- engaged in sexual contact with the complainant by touching her genitals with the intent to arouse and gratify his sexual desire,

- engaged in sexual contact with the complainant by touching her breasts with the intent to arouse and gratify his sexual desire,

- engaged in sexual contact with the complainant by touching through her clothing the complainant's genitals with the intent to arouse and gratify his sexual desire,

- engaged in sexual contact with the complainant by touching through her clothing the complainant's breasts with the intent to arouse and gratify his sexual desire,

- with intent to arouse and gratify his sexual desire, have sexual contact with the complainant by having the complainant touch appellee's genitals, and/or

- with intent to arouse and gratify his sexual desire, cause the complainant to expose her genitals by removing her clothing which covered her genitals.

The State's notice to the defense more than thirty days before the date of the

first trial setting was sufficient under Article 38.37 to prevent any surprise from the

information included in the prosecutor's notes. *See Pena v. State*, 554 S.W.3d 242,

42

248–49 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (noting purpose of Article 38.37's notice provisions for admission of extraneous offenses is to avoid surprise and to allow defendant to mount effective defense).

**3.     Rules of Evidence 404(b) and 609**

Nunez also objected to admission of the complainant's statements on the grounds that it violated Texas Rules of Evidence 404(b) and 609.

Rule 404(b) provides:

**(b) Crimes, Wrongs, or Other Acts.**

**(1) *Prohibited Uses*.** Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2) *Permitted Uses; Notice in Criminal Case*.** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence--other than that arising in the same transaction--in its case-in-chief.

TEX. R. EVID. 404(b).

Rule 609 provides that "[e]vidence of a criminal conviction offered to attack a witness's character for truthfulness must be admitted if: (1) the crime was a felony or involved moral turpitude, regardless of punishment; (2) the probative value of the evidence outweighs its prejudicial effect to a party; and (3) it is elicited from the witness or established by public record. TEX. R. EVID. 609. The purpose of the rule

43

is to give an adverse party a fair opportunity to contest the use of a witness's convictions and to prevent ambush. *See Johnson v. State*, 885 S.W.2d 578, 581 (Tex. App.—Dallas 1994, no writ).

Neither Rule 404(b) nor Rule 609 could have provided a basis for the trial court's ruling excluding the complained-of statements. The rules of evidence, except those concerning privilege, do not apply to pretrial suppression hearings. *See Hubert v. State*, 312 S.W.3d 554, 558 n.3 (Tex. Crim. App. 2010) ("We have held that the Rules of Evidence do not apply in a pre-trial suppression hearing."); *Granados v. State*, 85 S.W.3d 217, 227 (Tex. Crim. App. 2002) ("Because suppression hearings involve the determination of preliminary questions concerning the admissibility of evidence . . . the rules of evidence (except privileges) no longer apply to suppression hearings."); *see also Schultz v. State*, 457 S.W.3d 94, 98 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("With the exception of rules concerning privileges, the Texas Rules of Evidence do not apply in a suppression hearing."). Further, Rule 609 applies to impeachment of a witness with evidence of a criminal conviction. TEX. R. EVID. 609. There is no reference in the excluded statements to either Nunez or the complainant having a criminal conviction.

In summary, we conclude that the State did not have a duty to disclose the complained-of statements to the defense under Article 39.14, and none of the other grounds on which Nunez objected to admission of the statements—the Sixth

44

Amendment's Due Process Clause, Article 38.37, and Rules of Evidence 404(b) and 609—provided a basis for the trial court's exclusionary rulings. The trial court abused its discretion in excluding the statements set forth in Exhibit 1 to its April 28, 2023 order. Accordingly, we sustain the State's issues.

## Conclusion

We reverse the trial court's April 28, 2023 Order on Defendant's Motion to Exclude Evidence and we remand this case to the trial court for further proceedings.

Amparo Monique Guerra
Justice

Panel consists of Chief Justice Adams and Justices Guerra and Farris.

Do not publish. *See* TEX. R. APP. P. 47.2(b).